## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **CHESTERTON CAPITAL LLC,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | |
| **LEGACY POINT CAPITAL LLC,** ) | |
| **BYRON L. HOLLEY and JOHN C.** ) | |
| **LOUDON,** ) | |
| **Defendants.** ) | |

## COMPLAINT

### Introduction

1.      This civil action seeks money damages from defendants Legacy Point Capital

LLC ("Capital"), Byron L. Holley ("Holley") and John C. Loudon ("Loudon") as a result of their

intentional deceitful and knowing misrepresentations made as the managing members of Capital

in order to obtain funds to finance a film project known as "GET IT WHILE YOU CAN—THE

JANIS JOPLIN STORY" (the "GIWYC Project").  Damages are sought for common law fraud

and for violation of Mass. Gen. Laws Ch. 93A.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (a) as the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and

the civil action is between citizens of different states.

3.      This Court has personal jurisdiction over the defendants as the wrongful conduct

alleged herein occurred in the Commonwealth of Massachusetts and, on information and belief,

the defendants transacted business within this District, carried out trade and commerce in

substantial part in this District, and hired agents in this District.

4.      Venue is appropriate within this District under 28 U.S.C. § 1391(b)(2).

## Parties

5.      Plaintiff Chesterton Capital LLC ("Chesterton") is a Massachusetts limited liability company that has its principal place of business at 222 Boston Avenue, Medford, Massachusetts 02155.  Chesterton's managing member is John P. Walsh, Jr., a resident of the Commonwealth of Massachusetts.

6.      Defendant Legacy Point Capital LLC ("Capital") is a Delaware limited liability company that, on information and belief, lists its principal place of business at 16192 Coastal Highway, Lewes, DE 19958.  Legacy Point Capital describes itself as "a boutique investment banking and advisory firm focused on providing Transactional Financial Engineering Services through its strategic partners by utilizing Movie & Entertainment Financing, Credit Enhancements, Debt & Equity, Asset Management and Premium Finance Life Insurance to its clientele and for its own transactions."  The GIWYC Project was represented to Chesterton to be a project of Capital.

7.      Defendant Byron L. Holley ('Holley") is a managing member of Capital and, on information and belief, resides at 479 Laketower Drive, Unit 205, Lexington, Kentucky 40502. At all times relevant to the allegations in this Complaint, Holley was acting as managing member of Capital.

8.      Defendant John C. Loudon ('Loudon") is the other managing member of Capital and, on information and belief, resides at 1118 Westbrooke Way NE, Atlanta, Georgia 30319. At all times relevant to the allegations in this Complaint, Loudon was acting as managing member of Capital.

2

**Facts**

9.      In 2012, Capital had been retained to raise funds for the GIWYC Project, a movie biopic of the musical legend Janis Joplin.  Capital, through Holley and Loudon, represented to potential investors that the budget for the GIWYC Project was approximately $20 million and that Capital was willing to invest approximately half of the necessary sum or $10 million. Capital's goal was to raise the remaining $10 million, 50% of the picture budget of $20 million dollars, from a limited number of qualified, accredited  investors.

10.      In order to achieve that goal, Capital prepared a brochure describing the opportunity, the financial investment, recoupment and profit participation, the executive production team, and cast involved in the GIWYC Project.  A true copy of the brochure is annexed hereto as Exhibit 1 (hereinafter the "Pitch Brochure").  The Pitch Brochure states that it "is anticipated that appropriate investment documents including a Private Placement Memorandum will be prepared within a time frame, which will make it practicable to finance production of the Picture in Fall/Winter 2012 . . . ."

11.      On information and belief: in approximately June of 2012, Capital approached Anne Brensley, who at the time was managing director of BFT Advisors LLC located in Boston, Massachusetts, to act as its consultant and agent on the terms of any deal with the producers and distributors of the movie.  Ms. Brensley agreed to assist Capital.  At all times material to the allegations in the Complaint, Ms. Brensley's actions in Massachusetts were authorized by Capital.

12.      Capital authorized Ms. Brensley to seek out financing for the GIWYC Project in Massachusetts.  In or around September of 2012, Ms. Brensley, on behalf of Capital, approached Mr. Walsh, as managing director of Chesterton,  about providing a bridge loan to the GIWYC Project.  Many of Capital's representations that are the subject matter of this Complaint were

3

initially made by Ms. Brensley, acting as Capital's agent, in Massachusetts on "information" provided by Holley and Loudon and confirmed by Holley and Loudon in telephone conversations with Mr. Walsh.

13.     Capital represented that it had an exclusive on the  GIWYC Project and that Capital had experience and expertise in raising financing for movies.  Unknown to Chesterton:

(a)     Capital was newly incorporated in March of 2012 and so had only been in business for a few months.

(b)     Although Capital claimed to be an investment bank, claimed to have done over a billion dollars in deals, and claimed to be supported by Tripp Amos and the Amos family, it was thinly funded and did not actually have an office of its own.  Rather, Capital had a "door office" in name only obtained from Harvard Business Services, Inc. which was in the business of incorporating new start-ups and permitting them to use Harvard Business Services, Inc.'s office address as the office for new start-ups such as Capital.

(c)     By the time Chesterton was approached for bridge financing, Capital had lost its exclusive arrangement to finance the GIWYC Project because the time period for the exclusivity had expired and Capital had failed or refused to fund its half of the GIWYC Project for $10 million.

(d)     Unless Capital could produce bridge financing, Capital was told it would be shut out of the GIWYC Project.

14.     While it was initially Ms. Brensley who approached Chesterton because she knew of Chesterton, Holley and Loudon, acting as the managing members of Capital, worked with the producers to develop the budget of $1.2 million for the interim financing.  Holley and Loudon authorized Ms. Brensley to seek the $1.2 million interim financing from Mr. Walsh and

4

represented that they had the remaining financing lined up but that they needed 60 to 90 days to close at which time the interim financing would be repaid.  This was consistent with the statements in the Pitch Brochure that the film would go into production in the fall/winter of 2012.  These statements were made either directly by Holley and Loudon during telephone calls to Mr. Walsh in Massachusetts or through Ms. Brensley.

15.    These representations led Chesterton to consider making an investment in the GIWYC Project.  But before Chesterton would actually make the investment, it requested the personal guarantees of both Holley and Loudon and assurances that both Holley and Loudon had the financial ability to pay if a default were to occur.  In order to induce Chesterton to advance the financing, knowing that if they did not they would be shut out of the GIWYC Project, on or about October 10, 2012, Holley and Loudon both represented that they had no liens, encumbrances, bankruptcies or litigations against either one of them.

16.    In addition, both Holley and Loudon were required to, and did, provide financial statements.  On or about October 10, 2012, Holley represented that he had over $3 million in cash and securities in his personal account at Wells Fargo Advisors LLC and actually provided a statement with the account number blacked out purporting to be a Wells Fargo account statement.  That representation was false and Holley knew it was false when he made it for the specific purpose of getting the interim financing.  At the same time, Loudon also supplied a summary financial statement showing a personal net worth of approximately $600,000.

17.    Chesterton would not have entered into the transaction if at least one of the guarantors did not have available capital in excess of the $1.2 million bridge financing and both Holley and Loudon knew it.  On information and belief, Loudon also knew that Holley's representation was false and also knew that Capital needed to raise the interim financing if

Capital were going to be able to remain in the deal.  To that end, Capital continued to represent that it had binding commitments to finance the GIWYC Project and that the interim financing was necessary only until the permanent financing could be closed.  This was also false.

18.    In making these representations, both Holley and Loudon were acting on behalf of Capital within the scope of their employment and within the scope of their authority as managing members.

19.    But for Holley's representation as to his financial net worth, Chesterton would not have made an investment in the GIWYC Project.  Based on the supposedly financially meaningful personal guaranty of Holley, on October 10, 2012, Chesterton entered into a certain Production Loan Deal Memorandum with Get It While You Can, LLC ("GIWYC LLC") (the "Deal Memo").  A true copy of the Deal Memo is attached hereto as Exhibit 2.  GIWYC LLC was the entity formed to produce the Joplin movie.  The Deal Memo memorialized the terms of an agreement between Chesterton, as Lender, and GIWYC LLC, as borrower, pursuant to which Chesterton agreed to lend GIWYC LLC one million two hundred thousand dollars ($1,200,000.00) (the "Loan").

20.    The proceeds of the Loan were to be used by GIWYC LCC for the production of the film.  However, Holley and Loudon received a $60,000 fee for producing the interim financing.

21.    Although Holley and Loudon had repeatedly portrayed that the funds would be paid off within a few months, the Deal Memo actually gave an additional grace period and provided that GIWYC LLC was to repay the Loan in full by April 9, 2013 (the "Initial Term"), subject to a right to extend the time period for repayment. For the Initial Term, Chesterton was due an initial interest premium equal to seventeen (17%) percent of the outstanding Loan, or two

hundred four thousand dollars ($204,000.00) (the "Premium").

22.     The Initial Term could be extended by GIWYC LLC as of right up to one hundred eighty (180) days.  See Deal Memo, §6.1.  For each thirty (30) day period of the extension, GIWYC was required to pay Chesterton an increase in the Premium of an additional 2.5% of the outstanding Loan.  See Deal Memo, §6.1.  Under the Deal Memo, an Event of Default occurs if the Loan plus any outstanding Premium is not repaid in full at the end of the Initial Term or extension thereof.  See Deal Memo, §7.1.

23.     The Deal Memo provides, in relevant part, that:

> Repayment of the Loan shall also be guaranteed by Byron Holley and
> John Loudon pursuant to the terms of the Guaranty of Payment dated as of
> October 9, 2012, a copy of which is attached hereto.

See Deal Memo, §4.1 (emphasis added).  A true and accurate copy of the Personal Guaranty of Payment ("Personal Guaranty") is attached hereto as Exhibit 3.

24.     Both Defendants executed the Personal Guaranty and had it delivered to Chesterton in Massachusetts.  The Personal Guaranty provides that Holley and Loudon "… hereby absolutely and unconditionally guarantee the prompt payment to [Chesterton] of any and all amounts owing by [GIWYC LLC] to [Chesterton]."  See Personal Guaranty, §1 Guaranty. The Personal Guaranty further provides that: "Guarantors shall remain liable hereunder until the Obligations of [GIWYC LLC] have been fully paid, performed and observed by [GIWYC LLC], notwithstanding any act, omission or thing that might otherwise operate a legal or equitable discharge of Guarantor."  See Personal Guaranty, §1; see also §3 .

25.     The Loan, however, was not paid off by April 9, 2013.  Instead, GIWYC LLC exercised its right to extend the due date the full 180 days  to October 2013 (the "First Extension").  Nor were Capital, Holley and Loudon able to obtain funds from the so-called commitments that they had received to finance the GIWYC Project.  To the contrary, Holley and

Loudon claimed that the GIWYC Project was being delayed because it had not obtained the basic licenses to use Janis Joplin's music in the movie.

26.     Chesterton was again approached to advance the necessary funds to acquire the licenses for Janis Joplin's music.  In July, 2013, Chesterton lent $500,000 to GIWYC LLC in order to secure music licenses for Janis Joplin's music for the GIWYC Project.  The $500,000 loan was documented  by a Secured Promissory Note dated July 1, 2013 ("2013 Note") pursuant to which Chesterton agreed to lend GIWYC an additional $500,000.  The 2013 Note had a due date of October 15, 2013.  Chesterton would not have advanced these funds but for the fact that it had already advanced the $1.2 million and was now involved in the GIWYC Project.

27.     GIWYC LLC requested and, on October 27, 2013, Chesterton granted GIWYC LLC an additional extension of time to repay both parts of the Loan until December 15, 2013 (the "Second Extension").

28.     On December 15, 2013, by "Amendment dated as of December 15, 2013" (the 2013 Amendment"), Chesterton granted GIWYC LLC yet another extension of time to repay the loan until June 1, 2014 (the "Third Extension").  A true copy of the 2013 Amendment, signed by Ron Terry on behalf of GIWYC LLC, is annexed hereto as Exhibit 4.

29.     The 2013 Amendment recites all of the extensions Chesterton provided for the Loan and the principal and fees then due and owing by GIWYC LLC.  While extending the final due date to June 1, 2014, the 2013 Amendment provides:

> The Loans shall continue to accrue Premium amounts at the rate of 3.5% of the aggregate Principal ($1,700,000.00) from the date of this Amendment for each consecutive 30-day period (or portion thereof) until February 15, 2014; provided, however, that on and after February 16, 2014, if the Loans shall not then have been paid in full, the Premiums accrued as of February 16, 2014 and all Fees shall then be added to the aggregate Principal which, as so increased, shall continue to accrue additional Premium amounts at the rate of 3.5% for each consecutive 30-

8

day period (or portion thereof) that the Loans shall remain unpaid in whole
or in part.

30.     The unpaid fees that became part of the principal as of February 16, 2014

consisted of a production fee of $250,000, another production fee of $250,000, and a producer

fee of $100,000.

31.     Capital, Holley and Loudon  never raised additional funds sufficient to finance the

$20 million budget for the GIWYC Project or even to pay off any portion of Chesterton's loan.

Instead, on June 1, 2014, GIWYC LLC defaulted on the Loan.

32.     Chesterton has now recovered a judgment against GIWYC LLC in the amount of

$5,208,972.87, a true copy of which is annexed hereto as Exhibit 5.  On information and belief,

GIWYC LLC has no funds to repay the judgment.  But for the misrepresentations of the

defendants, Chesterton would never have made the Loan, would never have advanced more

funds as part of the Loan, would never have agreed to the extensions, and, today, would not be in

the position of holding a judgment that is uncollectable against GIWYC LLC.

33.     In an effort to mitigate its damages, Chesterton has brought suit on the Holley and

Loudon guarantees.  The suit is pending in the Suffolk Superior Court Department of the

Massachusetts Trial Court.  Both Holley and Loudon have denied any liability under their

guarantees.

34.     In connection with the Suffolk Superior Court suit, Chesterton's counsel sought to

trustee process Wells Fargo Advisors LLC.  Not until approximately December of 2015, when

Wells Fargo Advisors LLC produced documents, did Chesterton learn that Holley had lied about

having over $3 million in cash and securities in an account at Wells Fargo Advisors LLC.  The

records produced by Wells Fargo Advisors LLC showed that at the time of the representation in

October 2012, Holley's account had an opening value of $7,034.33 and a closing value on

9

October 31, 2012 of $12,700.04.  Had Chesterton known this at the outset it would never have

made the Loan in the first place, would never have agreed to advance additional funds, would

never have extended the Loan.

35.     Chesterton has, accordingly, been damaged as a result of the deceit of Capital,

Holley and Loudon to the full extent of its judgment against GIWYC LLC.

**First Claim for Relief**
**(Misrepresentation/Fraud)**

36.     Chesterton incorporates by reference the preceding allegations and paragraphs as

if set forth in full herein.

37.     Both Holley and Loudon, on behalf of Capital, made misrepresentations of

material fact, through affirmative statements and/or omissions concerning Holley's finances and

the commitment of other funds in order to induce Chesterton to invest in the GIWYC Project.

38.     Both Holley and Loudon either knew Holley's statements were false or recklessly

made and willfully disregarding their truth or falsity.

39.     Holley's material misstatements and/or omissions were made in order to induce

Chesterton  to believe that their investment would be secure and would be followed by other

funds to complete the GIWYC Project when, in truth, Holley and Loudon knew that Holley did

not have the represented funds and that there were no other committed funds.

40.     Chesterton reasonably relied on these representations and/or omissions under the

circumstances, and, based on their reliance, agreed to lend GIWYC LLC the loan amounts.

41.     As a result thereof, Chesterton has been substantially damaged.

**First Claim for Relief**
**(Violation of M.G.L. ch. 93A)**

42.     Chesterton incorporates by reference the preceding allegations and paragraphs as

if set forth in full herein.

ME1 22485330v.1

43.     Capital, Holley and Loudon are all engaged in trade and/or commerce within the meaning of § 1 of Chapter 93A.

44.     Chesterton, in conducting trade and/or commerce, suffered a loss of money as a result of defendants' use of unfair methods of competition and/or unfair and/or deceptive acts and/or practices as previously described in this Complaint.

45.     The actions and transactions constituting the alleged unfair method of competition and/or the unfair and/or deceptive acts or practices occurred primarily and substantially in Massachusetts.

46.     Defendants' unfair and deceptive acts and practices were knowing and/or willful.

47.     Defendants' unfair and deceptive acts and practices has caused Chesterton substantial damages, and is causing it to incur substantial attorneys' fees.

### Demands for Relief

48.     WHEREFORE, Chesterton respectfully requests that the Court:

(a)     After a jury trial, enter judgment in favor of Chesterton under the first claim for relief for fraud and misrepresentation;

(b)     Adjudge and decree that the conduct alleged herein is in violation of M.G.L. ch. 93A under the second claim for relief;

(c)     Award, where applicable, treble, multiple, punitive, and/or other damages, in an amount to be determined at trial, including interest;

(d)     Award Chesterton its costs of suit, including reasonable attorneys' fees as provided by law; and

ME1 22485330v.1

(e)     Grant such other further relief as the nature of the case may require or as

may be determined to be just, equitable, and proper by this Court.


                              CHESTERTON CAPITAL LLC
                              By Its Attorneys,


                              /s/ William A. Zucker
                              William A. Zucker, Esq., BBO # 541240
                              Amy B. Hackett BBO# 676345
                              McCarter & English LLP
                              265 Franklin Street
                              Boston, MA  02110
                              617-449-6500
                              617-607-9200 (fax)
                              wzucker@mccarter.com
                              ahackett@mccarter.com

May 9, 2016

ME1 22485330v.1