UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHESTERTON CAPITAL LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 16-cv-10848-LTS |
| LEGACY POINT CAPITAL LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTIONS TO DISMISS (DOCS. 24, 26) AND
ON MOTION TO STRIKE AND TO SEAL EXHIBITS (DOC. 29)

December 6, 2016

SOROKIN, D.J.

For the reasons that follow, the Court DENIES Defendant Byron Holley's Motion to Dismiss (Doc. 24) and Defendants Legacy Point Capital LLC's ("LPC") and John Loudon's Motion to Dismiss (Doc. 26). The Court also DENIES Mr. Holley's Motion to Strike and to Seal exhibits to Plaintiff's Opposition to the Motions to Dismiss (Doc. 29).[1]

I.  BACKGROUND

  A.  Procedural Background

On May 9, 2016, Plaintiff Chesterton Capital LLC filed a Complaint against Defendants, alleging they misrepresented information to induce Plaintiff to invest in a film production that

---

[1] The portion of Mr. Holley's Motion asking the Court to strike various exhibits is denied as moot, as the Court does not rely upon those exhibits. The portion of the Motion asking the Court to seal two exhibits containing Mr. Holley's "personal financial information" is also denied. Doc. 30 at 2. Contrary to Mr. Holley's argument, the exhibits are relevant, and, in any event, they do not display any personal identifiers. See L.R. 5.3. Thus, there is no basis for sealing the exhibits.

ultimately failed.  Doc. 1.  On August 11, 2016, Mr. Holley filed his Motion to Dismiss ("Holley Motion"), and on August 12, 2016, Mr. Loudon and LPC filed their Motion to Dismiss ("Loudon Motion").  Docs. 24, 26.  On August 25, 2016, Plaintiff filed an Opposition to both Motions.  Doc. 28.  On September 1, 2016, Mr. Holley filed his Motion to Strike and to Seal.  Doc. 29.  On September 13, 2016, Plaintiff filed an Opposition to that Motion.  Doc. 31.

      B.      The Complaint's Allegations[2]

In 2012, LPC was raising funds for the production of a film biopic of Janis Joplin ("film project").  Doc. 1 at 3.  The film was going to be produced by Get It While You Can, LLC ("GIWYC"), and the production had an estimated budget of $20 million.  Id. at 3, 6.  Through its managing members, Holley and Loudon, LPC represented that it "was willing to invest approximately" $10 million and was aiming to raise the remaining $10 million from investors.  Id. at 3.  LPC asked Anne Brensley, a consultant based in Massachusetts, to assist the company in raising funds, and authorized her to be LPC's agent in seeking out financing.  Id.

In or around September 2012, Ms. Brensley, on behalf of LPC, approached John P. Walsh, Plaintiff's managing director, about providing interim "bridge" financing to the film project.  Id.  Holley and Loudon authorized Ms. Brensley to seek $1.2 million from Plaintiff.  Id. at 4.  LPC "represented" – the Complaint does not specify how or through whom – to Plaintiff that it had an "exclusive" arrangement to finance the film project, and that it "had experience and expertise in raising financing for movies."  Id.  In fact, unknown to Plaintiff, LPC was "newly incorporated in March of 2012," had lost its "exclusive arrangement," and had been "told it

---

[2] In considering the Motions to Dismiss, the Court must accept the Complaint's factual allegations as true and draw all reasonable inferences in Plaintiff's favor.  Saldivar v. Racine, 818 F.3d 14, 16 (1st Cir. 2016).

would be shut out of" the film project unless it could produce $1.2 million of bridge financing. Id.

"Holley and Loudon . . . represented [to Plaintiff] that they had the remaining financing lined up but that they needed 60 to 90 days to close[,] at which time the interim financing would be repaid." Id. at 5. Based on that representation, Plaintiff considered making a loan to GIWYC. Id. Before doing so, however, Plaintiff requested "assurances that both Holley and Loudon" would be able to repay the loan if GIWYC defaulted. Id.

On or about October 10, 2012, with the intention of inducing Plaintiff to advance bridge financing to GIWYC, Holley and Loudon "represented that they had no liens, encumbrances, bankruptcies or litigations against either one of them." Id. On the same date, Holley "represented that he had over $3 million in cash and securities in his personal [Wells Fargo bank] account" and "provided a statement [purporting to be from Wells Fargo] with the account number blacked out." Id. However, "[t]hat representation was false," and both Holley and Loudon knew as much. Id. Holley misrepresented his personal assets "for the specific purpose of getting the interim financing." Id.

On October 10, 2012, Plaintiff entered into a contract, called a "Deal Memo," with GIWYC, in which Plaintiff agreed to lend GIWYC $1.2 million. Id. at 5-6. Were it not for Holley's misrepresentation of his personal savings, Plaintiff would not have entered into the Deal Memo. Id. Holley and Loudon received $60,000 for inducing Plaintiff to enter into the Deal Memo with GIWYC. Id. at 6.

According to the terms of the Deal Memo, GIWYC agreed to repay Plaintiff the $1.2 million loan principal plus 17% interest by April 9, 2013. Id. at 6-7. GIWYC had the option to extend the due date up to 180 days in exchange for paying an additional 2.5% interest for each

30-day period of extension.  Id. at 7.  If GIWYC did not repay by April 9, 2013, or by any extension from that date, then it would be in default.  Id.

Under Section 4.1 of the Deal Memo, repayment of the loan was "guaranteed by Bryon Holley and John Loudon pursuant to the terms of the [Personal Guaranty] dated as of October 9, 2012."[3]  Id.  The Personal Guaranty states that Holley and Loudon "hereby absolutely and unconditionally guarantee the prompt payment to [Plaintiff] of any and all amounts ow[ed] by [GIWYC] to [Plaintiff]."  Id. (citation omitted).  It further states that Holley and Loudon "shall remain liable hereunder until the Obligations of [GIWYC] have been fully paid, performed and observed."  Id.

GIWYC did not pay off the $1.2 million loan by April 9, 2013, the initial due date.  Id.  LPC, Holley, and Loudon were not "able to obtain funds from the so-called commitments that they had received to finance the [film] project."  Id. at 7.  Nevertheless, they claimed the project "was being delayed because [GIWYC] had not obtained the basic licenses to use Janis Joplin's music in the movie."  Id. at 8.

On July 1, 2013, after being "approached to advance the necessary funds to acquire the licenses," Plaintiff lent $500,000 to GIWYC, to be repaid by October 15, 2013.  Id.  Plaintiff "would not have advanced these funds but for the fact that it had already advanced the $1.2 million and was now involved in the [film project]."  Id.

On October 27, 2013, Plaintiff granted GIWYC an additional extension of time, until December 15, 2013, to repay both the initial $1.2 million loan and the subsequent $500,000 loan.  Id.

---

[3] The Personal Guaranty is actually dated October 10, 2012.  Doc. 1-3 at 2.

4

On December 15, 2013, Plaintiff granted GIWYC another extension of time, until June 1, 2014, to repay the $1.7 million total principal, on the condition that GIWYC pay more interest and various fees. Id. at 8-9.

On June 1, 2014, GIWYC defaulted. Id. at 9. Plaintiff sued GIWYC, and has recovered a judgment against it in the amount of approximately $5.2 million. Id. However, GIWYC has no funds to pay the judgment. Id.

Plaintiff has brought suit against Holley and Loudon in Suffolk County Superior Court (hereinafter, the "Suffolk County case") alleging they breached the Personal Guaranty. Id. "In connection with" that suit, Plaintiff's counsel learned in December 2015 that "Holley had lied [in October 2012] about having over $3 million in cash and securities in an account at Wells Fargo." Id. In fact, at the start of October 2012 Holley's account had about seven-thousand dollars, and at the end of that month it had about twelve-thousand dollars. Id. at 9-10. If Plaintiff had "known this at the outset it would never have made the [$1.2 million loan], would never have agreed to advance [$500,000 of] additional funds," and would never have granted the extensions. Id. at 10.

Plaintiff asserts it has "been damaged as a result of the deceit of [LPC], Holley and Loudon to the full extent of its judgment against GIWYC." Id. The Complaint asserts two claims against Defendants: fraudulent inducement[4] and violation of Mass. Gen. Laws ch. 93A ("Chapter 93A").[5] Id. at 10.

---

[4] To recover for fraudulent inducement, a plaintiff must "allege and prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon," and that the plaintiff reasonably relied on that misrepresentation. Masingill v. EMC Corp., 449 Mass. 532, 540 (2007) (citations and internal quotation marks omitted).

[5] Chapter 93A is "a broad Massachusetts consumer protection statute," under which a plaintiff "must prove that the defendant engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting Chapter 93A).

C. The Motions to Dismiss

The Holley Motion and Loudon Motion both argue that (1) this action is duplicative of an action pending in Suffolk County Superior Court; (2) this action is untimely; (3) venue is improper; (4) the Complaint omits a required party, Ms. Brensley; (5) the Deal Memo is a conditional loan that is not actually in default; and (6) the Deal Memo and Personal Guaranty are unconscionable. See Docs. 25, 27. The Holley Motion also argues for dismissal because Plaintiff (1) has not shown it reasonably relied on any representations by Defendants, and (2) has not specified the extent of its damages. Doc. 25 at 12, 15. The Loudon Motion, meanwhile, argues that the Complaint fails to state a claim against John Loudon specifically. Doc. 27 at 5.

II. DISCUSSION

To survive a motion to dismiss, a complaint "must provide fair notice to the defendants" and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Bruns v. Mayhew, 750 F.3d 61, 71 (1st Cir. 2014) (citation and internal quotation marks omitted); Ashcroft v. Iqbal, 556 U.S. 662, 678 (citation and internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted); see also id. at 679 (noting that a complaint must "permit the court to infer more than the mere possibility of misconduct") (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

A.     Whether This Action Is Barred by the Suffolk County Case

Defendants argue that the parties and issues in this case are the same as those in the Suffolk County case. Doc. 25 at 8; Doc. 27 at 3-4. Thus, they argue, this case should be dismissed under Massachusetts Rule of Civil Procedure 12(b)(9) or, in the alternative, "[a]fter weighing the equities." Doc. 25 at 9; Doc. 27 at 4. The Court can dispose of the Rule 12(b)(9) argument quickly, as the Federal Rules of Civil Procedure, not state procedural rules, govern in this case.[6] Medina-Rivera v. MVM, Inc., 713 F.3d 132, 141 (1st Cir. 2013). The Court will now address Defendants' "equities" argument.

Although neither Motion to Dismiss cites the case, Defendants are essentially asking the Court to abstain from exercising jurisdiction under Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), under which a district court may, in exceptional circumstances, choose to dismiss an action that is duplicative of another action pending in state court. See id. at 817-19; see also Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27-28 (1st Cir. 2010). Here, the Court need not explore whether exceptional circumstances exist because this case and the Suffolk County case are not duplicative. An action is considered duplicative if the parties and the theory of recovery are the same. Congress Credit Corp. v. AJC Int'l, Inc., 42 F.3d 686, 689 (1st Cir. 1994) (citations omitted). Here, the parties are not the same: in the Suffolk County case Plaintiff is suing only Holley and Loudon, whereas in this case Plaintiff is suing Holley, Loudon, and their company, LPC. Doc. 1 at 1, 9. The theories of recovery are not the same either: in the Suffolk County case Plaintiff is suing for breach of the Personal Guaranty under state common law, whereas in this case Plaintiff is suing for fraudulent inducement to

---

[6] Mass. R. Civ. P. 12(b)(9) has no federal counterpart. Even if it did, the rule would not apply because it provides for dismissal of a second action only if the parties and the issues are the same as in the first. Okoli v. Okoli, 81 Mass. App. Ct. 381, 386 (2012). As the Court explains infra, the parties and issues in this case are not the same as in the Suffolk County case.

7

enter into the Deal Memo and Personal Guaranty, under both state common law and Chapter 93A.  Compare id. at 9-10 with Doc. 27-1 at 5-6.  The outcome of the state action has little, if any, bearing on the outcome of this case:  one could find that Holley and Loudon did not breach the Personal Guaranty but still find that they fraudulently induced Plaintiff into signing the Personal Guaranty and Deal Memo.  See Congress Credit, 42 F.3d at 690.  Thus, this case is not duplicative of the Suffolk County case.

In the alternative, assuming *arguendo* this case is parallel to the Suffolk County case, the Court declines to exercise its discretion to abstain.  If this case is duplicative of the state case, then it "is a garden variety federal diversity case requiring only the application of settled principles of state law to an ordinary contract dispute."  Nazario-Lugo v. Caribevision Holdings, Inc., 670 F.3d 109, 119 (1st Cir. 2012).  Consequently, any "parallel litigation, though giving rise to some normal risks of inexpediency, does not display exceptional circumstances that clearly justify departure from the federal court's obligation to exercise jurisdiction."  Id.  Indeed, the Court notes that various factors that favor abstention are absent from this case:  neither the State nor this Court has assumed jurisdiction over a *res*; this forum is as geographically convenient for the parties as the state forum; a contract dispute does not raise a risk of "piecemeal litigation"; and there are no "particularly novel, unusual or difficult questions of legal interpretation that are best left to state court resolution."  Id. at 115-18 (citations omitted).  Thus, abstention is inappropriate.

    B.    Whether Venue Is Proper

Defendants argue this action should be dismissed for improper venue because, according to Section 13.9 of the Deal Memo, "Massachusetts law shall apply to this Deal Memo (including

8

non-contractual obligations arising out of or in connection with it) and the parties shall submit to the Superior Court of Massachusetts located in Boston, Suffolk County, in respect of any such dispute or claim." Doc. 1-2 at 6; Doc. 25 at 5; Doc. 27 at 9. They argue that this choice-of-forum provision should apply here because although the Personal Guaranty is, under Massachusetts law, an obligation "independent" of the Deal Memo, it is still "an integral part" of the Deal Memo and thus arises "in connection with" it. Doc. 25 at 6 (citation omitted).

Defendants' argument fails, as they cannot enforce the provisions of the Deal Memo. State law governs the interpretation and applicability of the Deal Memo, since "the basis for federal jurisdiction is the diverse citizenship of the parties." Markle v. HSBC Mortgage Corp., 844 F. Supp. 2d 172, 179-80 (D. Mass 2011) (citations omitted). Under Massachusetts law, because Defendants were not parties to the Deal Memo, they would only be able to enforce it if they were third-party beneficiaries of it. Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 464 (2009). "[A] contract does not confer third-party beneficiary status unless the language and circumstances of the contract show that the parties to the contract clearly and definitely intended the beneficiary to benefit from the promised performance." Id. at 466 (citation, internal quotation marks, and alterations omitted). Here, Defendants do not point to any language in the Deal Memo *or* any circumstances showing that Plaintiff and GIWYC "clearly and definitely intended" for Defendants to benefit from the performance of the Deal Memo. Thus, Defendants have no basis to enforce the Deal Memo's choice-of-forum provision.[7]

---

[7] The only contract Defendants may enforce is the one to which they are parties, i.e., the Personal Guaranty. Indeed, the Personal Guaranty "sets forth the entire understanding of the parties" and "supersedes any prior or contemporaneous written" agreement, which presumably includes the Deal Memo because it was signed the same day. Doc. 1-3 at 4. Significantly, unlike the Deal Memo, the Personal Guaranty contains a choice-of-law clause but *not* a choice-of-forum clause. Id.

C.  Defendants' Various Other Arguments for Dismissal

Defendants' other arguments for dismissal are without merit. First, Defendants argue this action is untimely. They assert that Plaintiff could not have amended its complaint in the Suffolk County case to add a fraudulent inducement or Chapter 93A claim, as the deadline for amending the complaint has passed under the Superior Court's scheduling order. Consequently, they argue, this Court should dismiss the claims in the instant case as time-barred. See Doc. 25 at 10; Doc. 27 at 5. Defendants cite no authority, and the Court cannot locate any, supporting the proposition that a state court's scheduling order in a non-duplicative case determines whether a claim is timely in federal court. Thus, the Court rejects Defendants' argument.

Second, Defendants argue this action should be dismissed under Fed. R. Civ. P. 12(b)(7) because Plaintiff has failed to join a required party, Anne Brensley, under Fed. R. Civ. P. 19. Doc. 25 at 6; Doc. 27 at 10. This argument fails. Rule 19 provides for "dismissal of suits when joinder of a required party is not feasible." Bacardi Int'l Ltd. v. Suarez & Co., Inc., 719 F.3d 1, 9 (1st Cir. 2013) (citations omitted). "The Rule calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." Id. (citations omitted). "[A] court must first determine if an absent party is a 'required party,'" then determine whether joinder "is feasible." Id. at 10 (citation and footnote omitted); Fed. R. Civ. P. 19(a). According to the Complaint, as an agent of LPC, Ms. Brensley allegedly misrepresented that the company had an exclusive arrangement to finance the film project and had experience in raising financing for movies. Doc. 1 at 3-4. Whether Defendants, the alleged tortfeasors, consider Ms. Brensley a joint tortfeasor or merely an unwitting agent, she is not a required party under Rule 19. Charest v. Fed. Nat'l Mortg. Ass'n, 9 F. Supp. 3d 114, 134 (D. Mass. 2014) (collecting authorities). Thus, there is no basis for dismissal under Rule 12(b)(7).

10

Third, Defendants argue this action should be dismissed because, under the Deal Memo, GIWYC's "payment obligations" to Plaintiff – which Defendants guaranteed – "were conditional on either production funding or sale or monetization of . . . tax credits, neither which event occurred."  Doc. 27 at 8; see also Doc. 25 at 11.  Thus, Defendants argue, the Deal Memo is not in default and Defendants do not owe any money to Plaintiff under the Personal Guaranty.  Doc. 27 at 8; Doc. 25 at 12.  This argument is irrelevant:  whether the Deal Memo is in default has no bearing on whether Defendants fraudulently induced Plaintiff into signing the Deal Memo.  In any event, Plaintiff's $5.2 million judgment against GIWYC belies Defendants' claim that the Deal Memo is not in default.  Doc. 1 at 9.

Fourth, Defendants make a vague argument that the Deal Memo is unconscionable because it allows Plaintiff to both hold collateral property and sue for damages.  See Doc. 25 at 15-17.  Presumably, Defendants mean to argue that, because the Deal Memo is unconscionable, their guarantee of GIWYC's obligations under it is also unconscionable.  It is doubtful Defendants can challenge the validity of the Deal Memo, given they are not parties to or third-party beneficiaries of it.  See Cumis Ins., 455 Mass. at 464, 466.  Assuming *arguendo* Defendants can challenge its validity, their argument fails.  Under Massachusetts law, to "prove that the terms of a contract are unconscionable," a party bears a "heavy burden" of showing "both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise."  Bekele v. Lyft, Inc., __ F. Supp. 3d __, 2016 WL 4203412 (D. Mass. 2016) (citations and internal quotation marks omitted).  Defendants have not shown the Deal Memo was either substantively or procedurally unconscionable, let alone that it was both.  For example, they do not cite any

11

authority – and the Court is not aware of any – stating that a party to a contract may not hold collateral and sue for damages. Nor do Defendants explain how the circumstances surrounding the formation of the Deal Memo gave them "no meaningful choice" and subjected them to "unfair surprise." Thus, the Court has no basis to find the Deal Memo, or Defendants' guarantee of GIWYC's obligations under it, unconscionable.

Fifth, the Holley Motion argues that Plaintiff has not stated a claim for fraudulent inducement because Plaintiff cannot show reasonable reliance on Defendants' alleged misrepresentations. Doc. 25 at 12. Mr. Holley seems to argue that Plaintiff's reliance on his allegedly false bank statement was unreasonable because Plaintiff, a sophisticated investment company, "had the opportunity to do its due diligence" – i.e., had the opportunity to verify the bank statement – but "elected not to do so." Id. at 13. Plaintiff was not required to plead that it performed due diligence, for it has pled that Defendants willfully made false representations with intent to deceive, in which case they cannot be "relieved of liability because of [the alleged] victim's lack of diligence." McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 713 (1990) (citation and internal quotation marks omitted).

Sixth, the Holley Motion argues that this action should be dismissed because "nowhere in the complaint does it state the amount of damages it claims as to the defendants." Doc. 25 at 15. This argument is simply false. See Doc. 1 at 10 (claiming Plaintiff has "been damaged . . . to the full extent of its [$5.2 million] judgment against GIWYC").

Finally, the Loudon Motion argues that the Complaint fails to state a claim against Mr. Loudon. Doc. 27 at 5. Loudon argues that Plaintiff is improperly seeking to hold him liable "solely" for "the alleged misrepresentations of Mr. Holley." Id. at 7. In fact, Plaintiff seeks to hold Loudon liable for deciding to stay silent when his business partner, Holley, misrepresented

his personal assets, for the sake of inducing Plaintiff to sign the Deal Memo.  See Doc. 1 at 5-6.  Loudon's alleged decision would constitute a material misrepresentation by omission, which is actionable under Chapter 93A.  See Stolzoff v. Waste Sys. Int'l, Inc., 58 Mass. App. Ct. 747, 765 (2003); see also Gargano v. Liberty Int'l Underwriters, Inc., 575 F. Supp. 2d 300, 304 (D. Mass. 2008).  Thus, Plaintiff has stated a claim against Loudon.

III.    CONCLUSION

For the foregoing reasons, the Court DENIES (1) the Holley Motion (Doc. 24); (2) the Loudon Motion (Doc. 26); and (3) Mr. Holley's Motion to Strike and to Seal exhibits to Plaintiff's Opposition (Doc. 29).  The Clerk shall schedule a Rule 16 Conference with the parties.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge