UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHESTERTON CAPITAL LLC, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>LEGACY POINT CAPITAL LLC et. )<br>al. )<br>    Defendants )  | CIVIL ACTION No. 1:16-CV-10848-LTS |

## **DEFENDANTS', JOHN LOUDON'S AND LEGACY POINT CAPITAL LLC'S ANSWER TO THE COMPLAINT**

1. This paragraph is an introductory statement which does not require an answer. To the extent that an answer is required, it is admitted that the defendants Byron L. Holley and John C. Loudon are the managing members of the defendant Legacy Point Capital, LLC ("Legacy") and that Legacy negotiated financing from the plaintiff Chesterton Capital, LLC ("Chesterton") on behalf of Get It While You Can, LLC ("GIWYC") for the production of an eponymous biopic about the life of Janis Joplin ("the GIWYC project"). The remaining factual allegations in this introductory paragraph are denied.

### Jurisdiction and Venue

2. Denied that this Court has subject matter jurisdiction for the reasons set forth in the defendant's motion to dismiss.

3. Denied that this court has personal jurisdiction over the defendants for the reasons set forth in the defendant's motion to dismiss.

4. Admitted that venue would be proper, if there was subject matter and personal jurisdiction, which are denied.

**Parties**

5. Admitted.

6. Admitted only that Legacy is a Delaware LLC and that the quoted language was taken from drafted pitch brochure attached the Complaint as Exhibit 1. The remaining allegations in this paragraph are denied.

7. Admitted.

8. Admitted.

9. Admitted only that in 2012, Legacy was working with GIWYC to obtain financing for the production of a film about the legendary Janis Joplin; that the defendants understood from GIWYC that the budget for the film was approximately $20 million and that $10 million of the production financing had already been committed; that Legacy had the opportunity to obtain an additional $10 million in financing on a non-exclusive basis; and that GIWYC needed $1.2 million in interim financing to secure the script rights and cover other pre-production costs until the first tranche of production financing was received, which opportunity they offered to Chesterton through Brensley. The remaining allegations in this paragraph are denied.

10. Admitted that Legacy prepared a draft pitch brochure with the aid of Brensley, Exhibit 1 to the Complaint, which document speaks for itself as to its contents.

11. Admitted that Legacy entered into a financing agreement with GIWYC.  Subsequently, Anne Brensley, the managing director of BFT Advisors, LLC, located in Boston, Massachusetts, demanded a co-financing agreement to obtain financing on behalf of GIWYC for the Janis Joplin biopic on behalf of her client, Chesterton.  Denied that Ms. Brensley's was at all relevant times acting with the authority of Mr. Loudon, Mr. Holley, Legacy Point Capital, LLC or Legacy Point Entertainment. John Loudon and Legacy Point Entertainment (collectively, the "Defendants") further

state that Ms. Brensley failed to disclose the fact that she was actually an agent of Chesterton and was compensated through legal, consulting, escrow and commission fees by Chesterton for brokering the loan in question. Ms. Brensley has had an ongoing business relationship with Chesterton.

12. Admitted that Legacy entered into a co-financing agreement with Anne Brensley to find financing on behalf of GIWYC for the Janis Joplin biopic after Brensley confirmed her client was interested.  To the extent that this paragraph so implies, Mr. Loudon denies providing Ms. Brensley with any false information. Ms. Brensley communicated directly with the principals of GIWYC in order to confirm information and Mr. Loudon relied on these representations in order to enter into the transaction.  Ms. Brensley had worked with Chesterton and its manager, John Walsh, on other film projects and that she approached him about participation in the GIWYC project by providing $1.2 million in interim financing.  The Defendants can neither admit nor deny what Brensley told Walsh, as alleged in the Complaint, since they were not a party to those conversations or communications, but further states that many of her actions and/or representations to Chesterton's counsel, William Moriarty, Esq., or Walsh, were not based on "information" provided by them nor confirmed by them in telephone conversations with Mr. Walsh.

13. Denied.

a. Admitted that Legacy was incorporated in March of 2012 and that it had only been in business a few months when it was first introduced to Chesterton as a potential investor in the GIWYC project.

b. Admitted only that Legacy was incorporated in Delaware by Harvard Business Services, Inc., which was in the business of incorporating new start-ups; that Legacy's address in Delaware was Harvard's business address, which was part of the service included; that Legacy claimed to be engaged in investment banking.  The remaining allegations in this paragraph are denied.

c. Brensley demanded that Mr. Loudon and Mr. Holley amend the LOI and enter into a co-

financing agreement with GIWYC with her on the agreement prior to her providing the name of Chesterton. Admitted only that the terms of Legacy's contract with GIWYC provided as alleged. Denied that this was the ongoing understanding between Legacy and the film's producers with regard to the Legacy's continued participation in the project. The remaining allegations in this paragraph are denied.

d. Admitted only that Legacy's participation in the GIWYC project was contingent on finding financing or investors. The remaining allegations in this paragraph are denied.

14. Admitted only that it was Defendant's understanding from Brensley that she approached Walsh because of her prior work with him on film financing; that in conjunction with her co-financing agreement with Legacy, she sought an investment by Chesterton of $1.2 million in the GIWYC project; that Defendants and Brensley believed at the time that the first $10 million in financing had been committed and was imminent; and that the pitch brochure, Exhibit 1 to the Complaint, speaks for itself. The remaining allegations in this paragraph are denied. It was Brensley who worked exclusively with GIWYC in order to develop the budget. Brensley aided in the preparation of the Pitch Brochure in order to attain the additional $10 million sought by GIWYC. Brensley represented she had experience in financing films before with Walsh and represented that the film was in a good position for attaining the balance of the financing therefore she recommended Chesterton make the investment. Loudon, Holley or Legacy never spoke to Walsh or any representative of Chesterton prior to the consummation of the deal.

15. Admitted that Chesterton, through Brensley requested personal guaranties from Holley and Loudon in conjunction with which Holley provided Chesterton with personal financial information as to his then financial assets and represented that he had no liens, encumbrances, bankruptcies or litigation against him or, to his knowledge. Loudon provided a separate statement to Chesterton through Brensley. Brensley fraudulently induced the personal guarantee from Loudon agreeing to accept 50% of the liability of the guarantee if ever called upon. The remaining allegations in this

paragraph are denied, including, in particular, but not limited to, that any representations made by Mr. Loudon or Mr. Holley or anyone with their knowledge, consent or authority was considered by or consideration for Chesterton making an investment in the GIWYC project. Defendants deny that Mr. Loudon had any knowledge as to any misrepresentations allegedly made by Mr. Holley to Chesterton. Mr. Holley and Mr. Loudon were, at all relevant times, residing in different states, and any information that Mr. Holley provided to Chesterton regarding his finances was not done through Mr. Loudon, but through Ms. Brensley.

16. As stated above, Mr. Loudon had no knowledge of what financial information Mr. Holley provided, and had no knowledge that he represented himself as having over $3 million in cash and securities at Wells Fargo Advisors LLC. Defendant further state that, assuming Mr. Holley did provide such information, they do not know whether or not such information was true at the time, or whether or not Mr. Holley knew it was true. Admitted that Mr. Loudon provided financial information about himself. The Plaintiff does not allege that any financial information provided by Mr. Loudon was false. The remaining allegations in this paragraph are denied.

17. Denied.

18. Admitted that, as managing members, Holley and Loudon were authorized to make representations on behalf of Legacy. As stated above in paragraphs 15 and 16 above. Mr. Loudon had no knowledge of what financial information Mr. Holley provided to the Plaintiff.

19. Admitted only that Chesterton entered a deal to invest in the GIWYC project which was memorialized in the, so called by the parties, Production Loan Deal Memorandum ("Deal Memo"), attached as Exhibit 2 to the Complaint; that the to be formed GIWYC LLC represented by Ron Terry and Bob Katz was the entity formed to produce the Joplin biopic; and that the Deal Memo, Exhibit 2 to the Complaint, speaks for itself. The remaining allegations in this paragraph are denied, including, in particular, but not limited to, that Chesterton would not have made an investment in the GIWYC project but for Holley's representation as to his net worth. Loudon had no knowledge of this.

20. Admitted that the proceeds of the $1.2 million investment by Chesterton and escrowed through Anne Brensley in the GIWYC project was used by GIWYC for the pre-production costs of the film, but the film has yet to be produced, and that GIWYC paid Legacy a $60,000 fee, which it split with Brensley as part of the co-financing agreement, for arranging the financing.

21. Admitted only that the Deal Memo, Exhibit 2 to the Complaint, speaks for itself.  The remaining allegations in this paragraph are denied.

22. Admitted that the Deal Memo, Exhibit 2 to the Complaint, speaks for itself.

23. Admitted only that the Deal Memo, Exhibit 2 to the Complaint, speaks for itself.  Denied that Exhibit 3 to the Complaint is a true and accurate copy of the Personal Guaranty of Payment which Loudon or Holley executed.

24. Admitted only that both Holley and Loudon signed a revised personal guaranty which was prepared by Brensley, providing, in relevant part, that he would receive the collateral pledged by GIWYC as security for Chesterton's investment in the event that GIWYC defaulted and he was required to stand as guarantor;  that Holley's guaranty was transmitted to Brensley in Boston; and that Brensley then substituted the original guaranty prepared by Chesterton's attorney, William Moriarty, without the provision for exchange of the GIWYC collateral for performance of the guaranty; that, without Holley's permission or authority to tender the original guaranty to Chesterton, Brensley did so, knowing that she had not obtained Chesterton's or Walsh's commitment to exchange the GIWYC collateral for payment, as she represented to the Defendants that she would and had; that the personal guaranty attached as Exhibit 3 to the Complaint speaks for itself, and, but for the language providing for exchange of the GIWYC collateral for payment, contains the same language as the revised personal guaranty which he executed.  Defendants state that Mr. Loudon did not sign the guaranty which Plaintiff is suing on. The remaining allegations in this paragraph are denied.

25. Admitted only that GIWYC did not repay Chesterton's investment by April 9, 2013 and, instead, as to Holley and Loudon and their personal guaranty of GIWYC's performance of the Deal

Memo, exercised the extension option for 180 days, to October 2013 (the First Extension") and that neither GIWYC nor the defendants procured the financing necessary to begin production during the First Extension, including, but not limited to, purchasing a license to use Janis Joplin's music from her estate. The remaining allegations in this paragraph are denied.

26. Admitted only that GIWYC, unilaterally and unbeknownst to Holley and Loudon and their personal guaranty of GIWYC's performance of the Deal Memo, made another deal with Chesterton and Walsh to invest an additional $500,000 in the GIWYC project, ostensibly to obtain the license for using Janis Joplin's music, for which GIWYC gave Chesterton a Secured Promissory Note dated July 1, 2013 (the "2013 Note"), pledging the same GIWYC collateral as was given by GIWYC as security for Chesterton's initial investment and which 2013 Note speaks for itself. The remaining allegations in this paragraph are denied, including, in particular, but not limited to, that Chesterton, a self-described asset based commercial lender knowledgeable and experienced in film financing, would not have thrown good money after bad, but for the fact that it had already advanced the $1.2 million and was now involved in the GIWYC project.

27. Admitted that GIWYC, unilaterally as to Holley and Loudon and their personal guaranty of GIWYC's performance of the Deal Memo, made another deal with Chesterton and Walsh to extend the time for repayment of both the original $1.2 million investment and the 2013 Note until December 15, 2013 (the "Second Extension").

28. Admitted that GIWYC, unilaterally as to Holley and Loudon and their personal guaranty of GIWYC's performance of the Deal Memo, made a separate deal with Chesterton to extend the time for repayment of both the original $1.2 million investment and the 2013 Note until June 1, 2014 (the "Third Extension") and that the "Amendment Dated December 15, 2013" attached as Exhibit 4 to the Complaint allegedly speaks for itself. The Defendants were not parties to the transaction and therefore can neither admit nor deny that Exhibit 3 to the Complaint is authentic.

29. The "Amendment Dated December 15, 2013" attached as Exhibit 4 to the Complaint

allegedly speaks for itself. The Defendants were not parties to the transaction and therefore can neither admit nor deny that Exhibit 4 to the Complaint is true, accurate or the authenticity of the signatures.

30. The "Amendment Dated December 15, 2013" attached as Exhibit 4 to the Complaint allegedly speaks for itself. The Defendants were not parties to the transaction and therefore can neither admit nor deny that Exhibit 4 to the Complaint is true, accurate or the authenticity of the signatures.

31. Admitted only that, due to the actions of Chesterton in holding the GIWYC collateral hostage for recoupment of what it has alleged is its entitlement to additional profits from the GIWYC deal, Legacy was not able to put together the production financing necessary to pay off the original investment or the additional sums for which GIWYC further mortgaged the collateral, to the defendants' detriment, and that on or about June 1, 2014, GIWYC defaulted on the Deal Memo.

32. Admitted that Exhibit 5 speaks for itself as to the litigation between Chesterton and GIWYC. Defendants have insufficient information to either admit or deny the solvency of GIWCY. The remaining allegations in this paragraph are denied, including, in particular, but not limited to that Chesterton, a self-described asset based commercial lender knowledgeable and experienced in film financing, would not have thrown good money after bad and would not be in the position of holding a judgment that is allegedly uncollectable against GIWYC LLC, but for the alleged misrepresentations of the defendants.

33. Admitted that there is litigation brought by Chesterton against Holley and Loudon on their personal guaranty pending in Middlesex Superior Court and that they have denied liability. Denied that the litigation is pending in Suffolk Superior Court. According to the docket, it was mistakenly filed in Suffolk County and transferred to Middlesex County as the proper venue.

34. Admitted only that Chesterton attempted to assert trustee process against Wells Fargo Advisors LLC in the Middlesex action and that records produced by Wells Fargo Advisors speak for themselves. The remaining allegations in this paragraph are denied, including, in particular, but not limited to, that Chesterton, a self-described asset based commercial lender knowledgeable and

experienced in film financing, would not have thrown good money after bad by making or extending its investment or investing additional funds, but for the alleged misrepresentations by Holley. Defendants further state that Mr. Loudon had no knowledge as to what financial information Mr. Holley provided to Chesterton, and whether or not such information was accurate.

35. Denied that Chesterton has been damaged as the result of any representation, misrepresentation, or any other alleged act or omission by Holley or that it is entitled to damages in the amount of its judgment against GIWYC, to which litigation Defendants were not a party or privy, or in any other amount or to any other relief in law or equity for which it has prayed or otherwise claims to be entitled.

### First Claim for Relief
### (Misrepresentation/Fraud)

36. Defendants incorporate by reference their responses to the allegations as set forth in paragraphs 1 through 35, inclusive, as if expressly rewritten and set forth herein.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

### First (*sic*) Claim for Relief
### (Misrepresentation/Fraud)

42. Defendants incorporate by reference their responses to the allegations as set forth in paragraphs 1 through 41, inclusive, as if expressly rewritten and set forth herein.

43. This is a statement of law, mixed statement of law and fact or conclusion of fact and/or law to which no answer is required. To the extent an answer is required, it is denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied that Chesterton has been damaged or caused to incur attorney's fees or costs as the result of any representation, misrepresentation, unfair or deceptive act(s) or practice(s) or any other act or omission by him or for which they are legally liable; denied that Chesterton is entitled to damages in the amount of its judgment against GIWYC, to which litigation Defendants were not a party or privy, or in any other amount; and denies that Chesterton is entitled to any other relief in law or equity.

## Demands for Relief

48. a through e.  WHEREFORE, Defendants deny that Chesterton has been damaged or caused to incur attorney's fees or costs as the result of any representation, misrepresentation, unfair or deceptive act(s) or practice(s) or any other act or omission by him or for which he is legally liable; denies that Chesterton is entitled to damages in the amount of its judgment against GIWYC, to which litigation Defendants were not a party or privy, or in any other amount; and denies that Chesterton is entitled to any other relief in law or equity and prays that this Honorable Court dismiss the plaintiff's Complaint as to them on all counts and causes of action.

## AFFIRMATIVE DEFENSE

49. Plaintiff's claims are barred by the statute of limitations.

## COUNTERCLAIM

50. The Plaintiffs in counter claim are John Loudon and Legacy Point Capital, and will be continued to be referred to as the "Defendants".

51. The Defendant in counter claim is Chesterton Capital LLC (hereinafter "Chesterton" or the "Plaintiff")

52. Ms. Brensley was at all relevant times an agent of Chesterton.

53. Ms. Brensley was compensated by Chesterton in connection with Ms. Brensley's brokering of the loan which is the subject of this case and/or in connection with the services that she

performed to facilitate the loan such as drafting documents including personal guarantees.

54. Ms. Brensley, and/or her company BFT Advisors, was paid $39,000.00 as a broker/legal fee from Chesterton in connection with the loan which is the subject of this case. See Exhibit A.

55. In and around October of 2012, Anne Brensley ("Ms. Brensley") sent John Loudon ("Mr. Loudon") a proposed draft of a guarantee (the "original guaranty") which called on him to promise to guarantee a debt in the amount of 1.2 million dollars owed by GIWYC, LLC to Chesterton Capital LLC.

56. Mr. Loudon did not agree to the terms of the original guarantee, and told Ms. Brensley that he wanted to add language which would give him the right to the collateral for the loan in the event that the loan went into default and he had to pay it off.

57. Ms. Brensley then drafted a new guaranty (the "revised guaranty") which gave Mr. Loudon the right to the collateral in the event that he had to pay the loan off. Mr. Loudon, in turn, signed the guaranty with the added language and then emailed it back to Ms. Brensley.

58. Ms. Brensley then said Mr. Loudon's signature needed to be notarized, so he emailed her back the signature page notarized.

59. Ms. Brensley forwarded Mr. Loudon's notarized signature to Chesterton.

60. Mr. Loudon never stated in writing or orally that he agreed to the terms of original guarantee, and no where in Chesterton's Motion for Summary Judgment do they allege so.

61. To induce Mr. Loudon to sign the guarantee, Plaintiff admits to only having received a signature page from Mr. Loudon.

62. Ms. Brensley agreed with Mr. Loudon to accept 50% responsibility for repayment of the guaranty.

63. Ms. Brensley has been involved in multiple business transactions with Chesterton, and continued to do business with Chesterton through 2016.

64. As an inducement for Mr. Loudon to do work with Ms. Brensley in connection with obtaining

financing for the film Get It While You Can, and to induce Mr. Loudon to trust Ms. Brensley to draft the necessary legal documents such as the personal guarantee, Ms. Brensley falsely represented herself as a legal and financial advisor. Ms. Brensley did not have, nor did she ever have, a license to practice law.

65. As an inducement for Mr. Loudon to sign a personal guaranty, the revised guaranty, Ms. Brensley stated to Mr. Loudon that he need not worry about being personally liable under the guaranty because Chesterton was well secured and, in the event of a default, would seek to levy on the collateral of the film rather than seek repayment from Mr. Loudon personally.

## COUNT I FRAUD/MISREPRESENTATION

66. Ms. Brensley statements as to her qualifications and her status as a legal advisor were untrue, and these statements caused Mr. Loudon to trust Ms. Brensley and do business with Ms. Brensley. As a result, Mr. Loudon was induced into signing a guarantee for a 1.2 million dollar loan where he received only a $15,000.00 commission as a result. As Ms. Brensley was an agent and/or employee of Chesterton, Chesterton would be vicariously liable or liable under the law of respondiat superior for Ms. Brensley's acts.

## COUNT II. FRAUD/MISREPRESENTATION

67. Ms. Brensley falsely represented to Mr. Loudon in writing that she would be responsible to share in the repayment of any amounts that Mr. Loudon may be held liable for caused Mr. Loudon to rely to his detriment on such statements and sign the revised guaranty. As Ms. Brensley was an agent and/or employee of Chesterton, Chesterton would be vicariously liable or liable under the law of respondiat superior for Ms. Brensley's acts.

## COUNT III. FRAUD/MISREPRESENTATION

68. Ms. Brensley committed fraud by switching the revised guaranty with the original guaranty causing Chesterton to bring suit on a guaranty which Mr. Loudon never signed, and which omitted terms that Mr. Loudon specifically bargained for as a condition for him to entering into

a personal guaranty. Mr. Loudon was damaged as a result in needing to defend and incur legal fees to defend against a lawsuit for the breach of a guaranty which he did not agree to nor sign. As Ms. Brensley was an agent and/or employee of Chesterton, Chesterton would be vicariously liable or liable under the law of respondiat superior for Ms. Brensley's acts.

### COUNT IV. FRAUD/MISREPRESENTATION

69. Ms. Brensley falsely stated to Mr. Loudon that he need not worry about being personally liable under the guaranty because Chesterton was well secured and, in the event of a default, would seek to levy on the collateral of the film rather than seek repayment from Mr. Loudon personally. Mr. Loudon, trusting in Ms. Brensley, signed a personal guaranty to his detriment based on her assurances. As Ms. Brensley was an agent and/or employee of Chesterton, Chesterton would be vicariously liable or liable under the law of respondiat superior for Ms. Brensley's acts.

### COUNT VI. BREACH OF FIDUCIARY DUTY

70. Ms. Brensley did not disclose to Mr. Loudon the fact that she had a conflict of interest with respect to obtaining financing for for the film, nor that she was going to receive a commission from Chesterton from doing so. She also did not disclose that she received compensation from Chesterton for being Chesterton's legal and financial advisor. Ms. Brensley, by acting as the agent of both the Defendants and Chesterton was unable to fulfill her duty of loyalty to both, and induced Mr. Loudon to enter into a very imprudent transaction as a result.

71. Ms. Brensley, by inducing Mr. Loudon, her principal, to guaranty a loan which she was making an undisclosed commission from Chesterton for brokering, engaged in self dealing.

72. Chesterton would be vicariously liable and or liable under the law of respondiat superior for the acts engaged in by Ms. Brensley described in paragraphs 66 and 67 above.

### COUNT VII. VIOLATION OF G.L. CH. 93A

73. It was a deceptive business practice for Ms. Brenley to engage in the acts described above, and

Mr. Loudon and Legacy Point Capital, LLC are entitled to triple damages and reasonable attorney's fees as a result from Chesterton who used Ms. Brensley as their agent.

## COUNT VIII. NEGLIGENCE

74. It was negligent of Chesterton do hire Ms. Brensley and/or give her authority as their legal advisor without verifying that she actually had a license to practice law. Chesterton failed to act reasonable under the circumstances in allowing Ms. Brensley to draft any of the legal documents in connection with a highly complex loan transaction. The Defendants were caused damage as a result by being sued and potentially liable for a 1.2 million dollar loan.

## JURY DEMAND

Defendants demand a trial by jury on all counts so triable.

WHEREFORE, Defendants demand that Plaintiff's claims be dismissed with prejudice, and that judgment enter against the Plaintiff on Defendants' counterclaims, and that Defendants be awarded triple damages and reasonable attorney's fees.

Respectfully submitted,

/s/ Joseph Perl
Attorney for John Loudon and Legacy Point Entertainment
BBO: 680509
203 Arlington St., Suite 2
Watertown, MA 02472
781-704-7047

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 21, 2016.

*/s/ Joseph Perl*
Joseph Perl