UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHESTERTON CAPITAL, LLC Plaintiff v. BYRON HOLLEY, JOHN LOUDON, and LEGACY POINT CAPITAL LLC, Defendants v. ANNE BRENSLEY Third Party Defendant | ) ) ) ) ) ) ) Civil Action No.: 1:16-cv-10848-LTS ) ) ) ) ) |

# DEFENDANTS', JOHN LOUDON'S AND LEGACY POINT CAPITAL LLC'S THIRD PARTY COMPLAINT AND JURY TRIAL DEMAND

## Introduction

1. The Defendants/Third Party Plaintiffs, John Loudon ("Mr. Loudon") and Legacy Point Capital LLC ("Legacy Point") seek to recover damages against the Third Party Defendant, Anne Brensley ("Ms. Brensley"), for, among other things, fraud, breach of fiduciary duties, breach of contract, indemnification, negligence, and violations of M.G.L. Ch. 93A.

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000.00, exclusive of interest and costs and the civil action is between citizens of different states. This Court has personal jurisdiction over the Third Party Defendant, Ms. Brensley, who is a citizen of Massachusetts.

## Parties

3. The Defendant/Third Party Plaintiff, Legacy Point, is a limited liability company with a principal place of business at 16192 Coastal Highway, Lewes, DE 19958.

4. The Defendant/Third Party Plaintiff, Mr. Loudon, is an individual who resides at 1118 Westbrooke Way, NE Atlanta, GA, 30319.

5. The Third Party Defendant, Ms. Brensley, is an individual residing at 28 Barney Hill Road, Wayland, MA 01778.

## Facts

6. In 2012, Mr. Loudon and Legacy Point were in the process of seeking out an investor to provide financing for a film, Get it While You Can ("GIWYC").

7. During that time period, Mr. Loudon met Anne Brensley who represented herself as an attorney as well as someone with experience in raising financing for films.

8. At the time, Ms. Brensley was the managing director of BFT Advisors LLC ("BFT") located in Boston.

9. Ms. Brensley entered agreed with Mr. Loudon and Legacy Point to become their agent and partnered up with them to help them obtaining the financing for GIWYC.

10. On or about August 15, 2012, Ms. Brensley and Mr. Loudon executed an agreement, the Co-Financing Services Agreement, whereby Ms. Brensley agreed to help in obtaining financing for GIWYC.

11. In and around February of 2013, Ms. Brensley and Mr. Loudon executed a joint venture agreement related to project of obtaining financing for GIWYC.

12. As part of the efforts to obtain financing for GIWYC, Ms. Brensley introduced Mr. Loudon and Legacy Point to Chesterton Capital, LLC ("Chesterton"), who, on or around October 10, 2012, loaned 1.2 dollars towards the production of GIWYC.

13. Neither Mr. Loudon nor Legacy Point were the recipients of the 1.2 million dollars. Rather, a separate company, Ron Terry ("Mr. Terry") and Robert Katz ("Mr. Katz"), on behalf of a company called Get it While You Can, LLC ("GIWYC LLC"), were the recipients of the 1.2 million dollar loan. Mr. Loudon and Legacy Point were acting as brokers and middle men of this loan, and do not have any ownership interest in GIWYC and are not related to Mr. Terry or Mr. Katz.

14. Ms. Brensley did not disclose to Mr. Loudon or Legacy point that she was also an agent of

Chesterton and had a conflict of interest, and that, not only was she going to receive a commission as a result of her joint venture with Mr. Loudon and Legacy Point for brokering the loan, but was also to receive a commission from Chesterton for brokering the loan, as well as compensation from Chesterton for acting as a "legal advisor" and for drafting loan documents including personal guarantees.

15. Ms. Brensley, and/or her company BFT Advisors, was paid $39,000.00 as a broker/legal fee from Chesterton in connection with the loan which is the subject of this case.

16. In and around October of 2012, Anne Brensley ("Ms. Brensley") sent John Loudon ("Mr. Loudon") a proposed draft of a guarantee (the "original guaranty") which called on him to promise to guarantee the repayment of the 1.2 million dollars which Chesterton was to loan to GIWYC.

17. At no point did Ms. Brensley advise Mr. Loudon that guaranteeing the repayment of 1.2. million dollars that he was not going to receive would be against his interest, and strongly encouraged him to enter into the guarantee to get the deal through.

18. Mr. Loudon did not agree to the terms of the original guarantee, and told Ms. Brensley that he wanted to add language which would give him the right to the collateral for the loan in the event that the loan went into default and he had to pay it off.

19. Ms. Brensley then drafted a new guaranty (the "revised guaranty") which gave Mr. Loudon the right to the collateral in the event that he had to pay the loan off. Mr. Loudon, in turn, signed the guaranty with the added language and then emailed it back to Ms. Brensley.

20. Ms. Brensley then said Mr. Loudon's signature needed to be notarized, so he emailed her back the signature page notarized.

21. Ms. Brensley forwarded Mr. Loudon's notarized signature to Chesterton.

22. Mr. Loudon never stated in writing or orally that he agreed to the terms of original guarantee, and no where in Chesterton's Motion for Summary Judgment do they allege so.

23. Chesterton has admitted to only having received a signature page from Mr. Loudon.

24. Mr. Loudon had later learned that Ms. Brensley and Chesterton had added the signature page to the terms of the original guarantee in order make a false claim against Mr. Loudon under the terms of the original guarantee which Mr. Loudon never signed.

25. Ms. Brensley agreed with Mr. Loudon to accept 50% responsibility for repayment of the guaranty.

26. Ms. Brensley has been involved in multiple business transactions with Chesterton, and continued to do business with Chesterton through 2016.

27. As an inducement for Mr. Loudon to do work with Ms. Brensley in connection with obtaining financing for the film Get It While You Can, and to induce Mr. Loudon to trust Ms. Brensley to draft the necessary legal documents such as the personal guarantee, Ms. Brensley falsely represented herself as a legal and financial advisor. Ms. Brensley did not have, nor did she ever have, a license to practice law.

28. As an inducement for Mr. Loudon to sign a personal guaranty, the revised guaranty, Ms. Brensley stated to Mr. Loudon that he need not worry about being personally liable under the guaranty because Chesterton was well secured and, in the event of a default, would seek to levy on the collateral of the film rather than seek repayment from Mr. Loudon personally, and, also, that, based on her experience in the film finance industry, the loan would be repaid in six months anyway which would relieve Mr. Loudon of liability under the personal guarantee.

## COUNT I FRAUD/MISREPRESENTATION

29. Ms. Brensley statements as to her qualifications and her status as a legal advisor were untrue, and these statements caused Mr. Loudon to trust Ms. Brensley and do business with Ms. Brensley. Ms. Brensley in fact did not have a license to practice law. As a result, Mr. Loudon was induced into signing a guarantee for a 1.2 million dollar loan where he received only a $15,000.00 commission as a result.

## COUNT II. FRAUD/MISREPRESENTATION

30. Ms. Brensley falsely represented to Mr. Loudon in writing that she would be responsible to share in the repayment of any amounts that Mr. Loudon may be held liable for caused Mr. Loudon to rely to his detriment on such statements and sign the revised guaranty.

## COUNT III. FRAUD/MISREPRESENTATION

31. Ms. Brensley committed fraud by switching the revised guaranty with the original guaranty causing Chesterton to bring suit on a guaranty which Mr. Loudon never signed, and which omitted terms that Mr. Loudon specifically bargained for as a condition for him to entering into a personal guaranty. Mr. Loudon was damaged as a result in needing to defend and incur legal fees to defend against a lawsuit for the breach of a guaranty which he did not agree to nor sign

## COUNT IV. FRAUD/MISREPRESENTATION

32. Ms. Brensley falsely stated to Mr. Loudon that he need not worry about being personally liable under the guaranty because Chesterton was well secured and, in the event of a default, would seek to levy on the collateral of the film rather than seek repayment from Mr. Loudon personally. Ms. Brensley also stated that, based on her experience in the film finance industry, the loan would be repaid in six months anyway which would relieve Mr. Loudon of liability under the personal guarantee. Mr. Loudon, trusting in Ms. Brensley, signed a personal guaranty to his detriment based on her assurances.

## COUNT VI. BREACH OF FIDUCIARY DUTY

33. Ms. Brensley did not disclose to Mr. Loudon the fact that she had a conflict of interest with respect to obtaining financing for for the film, nor that she was going to receive a commission from Chesterton from doing so. She also did not disclose that she received compensation from Chesterton for being Chesterton's legal and financial advisor. Ms. Brensley, by acting as the agent of both the Defendants and Chesterton was unable to fulfill her duty of loyalty to both, and induced Mr. Loudon to enter into a very imprudent transaction as a result.

34. Ms. Brensley, by inducing Mr. Loudon, her principal, to guaranty a loan which she was

making an undisclosed commission from Chesterton for brokering, engaged in self dealing.

## COUNT VII. VIOLATION OF G.L. CH. 93A

35. It was a deceptive business practice for Ms. Brensley to engage in the acts described above, and Mr. Loudon and Legacy Point Capital, LLC are entitled to triple damages and reasonable attorney's fees as a result from Chesterton who used Ms. Brensley as their agent.

## COUNT VIII. BREACH OF CONTRACT

36. Ms. Brensley agreed orally and in writing share responsibility for repaying Chesterton the 1.2 milliion dollar loan in exchange for Mr. Loudon's personal guarantee.

37. Ms. Brensely has breached that agreement by failing to pay Chesterton the amount owed by GIWYC LLC.

38. As a result of Ms. Brensley's breach, Mr. Loudon and Legacy Point have suffered damages as a result, including, but not limited to, having to defend a suit against them for more than 1.2. million dollars.

## COUNT IX INDEMNIFICATION

39. In the event that any liability of Mr. Loudon is found as a result of the allegations brought by Chesterton in this Court or in the Middlesex Superior Court, Ms. Brensley should, based on her promise to share 50% of the responsibility for repayment of the loan, be required to indemnify Mr. Loudon and Legacy Point in that amount.

## COUNT X. NEGLIGENCE

40. As both a partner and joint venture with Mr. Loudon and Legacy Point, Ms. Brensley owed a duty to both to exercise due care and sound business judgment when conducting business with them as part of their joint venture.

41. Ms. Brensley breached that duty making untrue statements inducing Mr. Loudon to execute a personal guarantee, as well as by switching his signature page from the revised guaranty to the original guaranty which Mr. Loudon did not agree to. It was also negligent for Ms. Brensley to

suggest that Mr. Loudon sign a personal guaranty to a 1.2 million dollar loan where he would only receive a commission of $15,000.00 as a result. Mr. Loudon was damages as a result of all of the above acts by, among other things, being sued for 1.2 million as well as incurring substantial legal fees.

## JURY DEMAND

Defendants demand a trial by jury on all counts so triable.

WHEREFORE, John Loudon and Legacy Point Capital, LLC demand that judgment enter against Anne Brensley on all of the above counts together with interest, costs, and attorney's fees.

Respectfully submitted,

/s/ Joseph Perl
Attorney for John Loudon and Legacy Point Entertainment
BBO: 680509
203 Arlington St., Suite 2
Watertown, MA 02472
781-704-7047

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 2, 2016.

*/s/ Joseph Perl*
Joseph Perl