UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

17 MAR 23  AM 11

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CHESTERTON CAPITAL, LLC ) | |
|     **Plaintiff** ) | |
| **v.** ) | |
| BYRON L. HOLLEY ) | **Civil Action No.: 1:16-cv-10848-LTS** |
| JOHN C. LOUDON and ) | |
| LEGACY POINT CAPITAL LLC, ) | |
|     **Defendants** ) | **MOTION TO DISMISS OR IN THE** |
| **v.** ) | **ALTERNATIVE TO ABSTAIN OR STAY** |
| ANNE BRENSLEY ) | **PROCEEDINGS** |
|     **Third Party Defendant.** ) | |

Third-Party Defendant, Anne Brensley (hereinafter referred to as "Defendant"),
respectfully motions this Court for a dismissal of this action or in the alternative for the Court to
abstain from exercising jurisdiction and/or for a stay of these proceedings pursuant to the
provisions of Rule 12(b)(6), Federal Rules of Civil Procedure, the federal declaratory judgment,
*Younger and Colorado River* abstention doctrines. In support of her Motion Defendant
incorporates herein his Memorandum in Support.

*Signature to follow*

Respectfully submitted,

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHESTERTON CAPITAL, LLC | ) | |
| Plaintiff | ) | |
| v. | ) | |
| BYRON L. HOLLEY | ) | Civil Action No.: 1:16-cv-10848-LTS |
| JOHN C. LOUDON and | ) | |
| LEGACY POINT CAPITAL LLC, | ) | **DEFENDANT ANNE BRENSLEY'S** |
| Defendants | ) | **MEMORANDUM IN SUPPORT OF** |
| v. | ) | **HER MOTION TO DISMISS OR IN THE** |
| ANNE BRENSLEY | ) | **ALTERNATIVE TO ABSTAIN OR STAY** |
| Third Party Defendant. | ) | **PROCEEDINGS** |

## **TABLE OF CONTENTS**

I.   Introduction

    a.   District court action
    b.   State court action
    c.   Comparison of the pending state court action and this federal court action

II.  Statement of Facts

III. Legal Standard

    a.   Standard for dismissal for failure to state a claim upon which relief can be granted
    b.   Breach of contract and agreement to enter into a contract at a late time (agreement to agree)
    c.   Parole evidence rule
    d.   Offering an opinion as to whether a third party will enforce a personal guarantee is not tantamount to negligence should that opinion turn out incorrect
    e.   The Court should abstain from exercising jurisdiction

IV.  Argument

    a.   As a matter of law, an agreement to enter into a contract at a later time is unenforceable
    b.   As a matter of law, oral representations are not sufficient, nor admissible to contradict the terms of a written contract
    c.   Anne Brensley's alleged suggestion that Chesterton Capital would foreclose on the film and likely sell it to another film company is not enforceable as a contract, nor is it actionable negligence
    d.   Loudon and Holley were aware of and requested the loan extensions identified in Count III of their Third Party Complaint
    e.   If the court denies Brensley's Motion to Dismiss, the court should abstain or stay the proceedings

I.    **Introduction**

This action was filed on January 2, 2017 in the U.S. District Court of Massachusetts by

John Loudon and Byron Holley (hereinafter collectively "Plaintiffs") against Anne Brensley

(hereinafter "Defendant"). On August 25, 2015 a year and a half earlier, an action was brought in

Middlesex Superior Court in Massachusetts by the Plaintiffs against the Defendant.

A. *District Court Action*

Plaintiffs' Third Party Complaint alleges the following against Defendant:

| | |
|---|---|
| Count I: | Fraud/Misrepresentation |
| Count II: | Fraud/Misrepresentation |
| Count III: | Fraud/Misrepresentation |
| Count IV: | Fraud/Misrepresentation |
| Count VI: | Breach of Fiduciary Duty |
| Count VII: | Violation of G.L. CH 93A |
| Count VIII: | Breach of Contract |
| Count IX: | Indemnification |
| Count X: | Negligence |

Counts I, II, IV, and VII of the Third Party Complaint allege Brensley made false oral

representations to Holley and Loudon that induced them to enter into a Personal Guaranty with

the Plaintiff, Chesterton Capital (hereinafter referred to as "Chesterton"). Count III alleges

Holley and Loudon did not intend to sign the guaranty they signed and that Brensley had

switched a revised guaranty with the original guaranty. Count VI and X alleges Brensley

committed a breach of her fiduciary duty to Holley and Loudon while acting as a dual agent.

Count VIII and IX alleges Brensley breached a contract to indemnify Loudon and Holley upon a

default on the loan.

B. *State Court Action*

Plaintiffs' State Court Third Party Complaint action no: 2014-07565-C alleges the following against Defendant:

| | |
|---|---|
| Count I: | Breach of Contract |
| Count II: | Indemnification |
| Count III: | Breach of Fiduciary Duty |
| Count IV: | Negligence |
| Count V: | Misrepresentation |

Several key allegations in the Federal court complaint have been addressed by Middlesex Superior Court Judge Kenneth Fishman.  In response to a Summary Judgment filed by Chesterton, Judgment Fishman found that because Holly and Loudon admitted to executing the original personal guaranty and attached the original personal guaranty to the third party complaint they submitted in Middlesex Superior Court, and again admitted executing that version, Holley and Loudon should be bound by the original guaranty.  In a decision written by Judge Kenneth Salinger of Middlesex Superior Court, the court also found Brensley was not an agent for Chesterton.

Brensley has submitted a Motion for Summary Judgment in Middlesex Superior Court. A Date is being set, attached hereto as Exhibit 12.

C. *Comparison of the Pending State Court Action with This Federal Action*

All the Superior Court claims are identical to those brought in District Court.  All facts the Plaintiffs allege in their misrepresentation and fraud claims and their 93(a) claim are identical to those alleged in Superior Court.  The Plaintiffs and Defendant are identical as well.

## II.    STATEMENT OF FACTS

Anne Brensely (hereinafter referred to as "Brensley") was the principal of BFT Advisors, LLC (hereinafter referred to as "BFT"). *See* State Action Third Party Complaint, ¶ 3, attached hereto as Exhibit 1.  Although Anne Brensley attended law school, she is not an attorney, nor

has she ever practiced law in any state or represented anyone in the capacity of an attorney. *See* Affidavit of Anne Brensley, attached hereto as Exhibit 2 at ¶ 7.

On or about August 15, 2012, Byron L. Holley and John C. Loudon, both of Legacy Point Capital, (herein referred to collectively as "Holley and Loudon") executed an agreement for services with Anne Brensley's company, BFT. *See* Exhibit 1 at ¶ 10. In exchange for a commission payment, BFT was to find a financier who would agree to lend Loudon and Holley $1.2 million dollars so they could fund their film project; a film entitled Get It While You Can, detailing the life of musician Janice Joplin. *See* Exhibit 1 at ¶ 10. In anticipation of the project, Loudon and Holley formed an LLC named "Get It While You Can, LLC" (hereinafter referred to as "GIWYC"). *Id* at ¶ 11. In accordance with their agreement, Brensley located a financier, Chesterton Capital (also referred to as "Lender"), and introduced its principal John Walsh to Loudon and Holley. *Id.* at ¶ 10-12. Thereafter, Walsh, Loudon, and Holley began negotiating a loan deal whereby Chesterton would lend to GIWYC, LLC the sum of $1.2 million dollars. *Id.* at ¶ 11-12.

At no time was Brensley an attorney for John Walsh, his company Chesterton Capital, or anyone else involved in the project to produce the GIWYC film. *See* Exhibit 2 at ¶ 7. In October 2012, Chesterton agreed to loan the GIWYC entity $1.2 million with a maturity date of six months. *See* Exhibit 1 at ¶ 14.

Loan terms negotiated between Chesterton and GIWYC were later memorialized in a Production Loan Deal Memorandum with GIWYC (hereinafter referred to as "Deal Memo") and a Secured Promissory Note (hereinafter referred to as "Promissory Note"). *See* Exhibit 1 at ¶ 15. Prior to the final negotiations and execution of the Deal Memo and the Promissory Note,

Chesterton Capital requested that Loudon and Holley personally guarantee the loan should their GIWYC entity default in paying it back. *Id.* at ¶ 16.

Brensley relayed this requirement to Loudon and Holley. *Id.* at ¶ 17. Contemporaneously, Loudon and Holley allege that Brensley offered her opinion, which suggested that if GIWYC could not repay the loan in six months, Chesterton would simply foreclose on the GIWYC entity and sell the property rights to another studio in lieu of triggering Loudon and Holley's Personal Guarantee. *See* Exhibit 1 at ¶ 19. At no time did Brensley guarantee such acts would occur, nor were the happenings of which reduced to writing and made a contingency of any part of the Personal Guarantee. *See* Exhibit 1 at ¶ 18-20; *see also* Personal Guarantee attached hereto as Exhibit 3. In response, Loudon and Holley expressed their discontent over some of the language Chesterton required. *See* Affidavit of John Loudon dated September 8, 2016, ¶ 2-3, attached hereto as Exhibit 4. Loudon and Holley asked Brensley to insert new language into the Personal Guarantee giving Loudon and Holley more rights, specifically the right to "…the collateral for the loan in the event that the loan went into default and I had to pay if off." *Id.*

Loudon and Holley essentially requested that should the Personal Guarantee trigger, they would get to retain the film's proprietary rights as well as have the ability to sell it to another studio should they choose. *Id.* Brensley forwarded a revised version of the Personal Guarantee (hereinafter referred to as "Alternate Version") to counsel for Chesterton, William Moriarty of the Boston law firm Sassoon & Cymrot. *See* Affidavit of William Moriarty, ¶ 8-9, attached hereto as Exhibit 5.

Chesterton refused the proposed language; instead demanded reinstatement of the original language where it could retain the film's property rights in the event of default. *Id.* [1]

Brensley relayed Chesterton's sentiments to Loudon and Holley and rather than back out of the loan deal, they signed the original Personal Guarantee without the preferred language. *See* Exhibit 1 at ¶21-22.

After receiving the funds, and after the six month maturity due date, the GIWYC entity defaulted on the $1.2 million dollar loan. *See* Judgment in Chesterton Capital LLC v. Get It While You Can, LLC, Docket No. 15-1408H, Suffolk Superior Court, attached hereto as Exhibit 7. After Loudon and Holley were made aware that GIWYC was facing a loan default, they advised the principals of GIWYC that a loan extension was needed. *See* Email correspondence from Byron L. Holley dated January 4, 2014, attached hereto as Exhibit 8.

Byron Holley wrote to the principals of GIWYC, as well as counsel for GIWYC Richard J. Garzilli, that if they did not agree to a loan extension then "….you will be considered to be acting in bad faith." *See* Exhibit 8.

Byron Holley stated via email to GIWYC:

"We strongly suggest you sign the extension as we understand a lawsuit is imminent at this moment without you taking action.  We will standby for confirmation the extension has been signed today."

*See* Id.

The terms of the extension were put forth by the lender Chesterton Capital.  *See* Affidavit of John Walsh, agent of Chesterton Capital, attached hereto as Exhibit 9.  Loudon and Holley agreed to them. *Id.* at ¶ 11.

By agreement between Chesterton and GIWYC, the Initial Term of the Loan was extended from April 9, 2013 to October 6, 2013 and then to December 15, 2013 and then again to June 1, 2014 (collectively the "Loan Extensions"). *Id.* at ¶ 11.

After receiving the funds, after the six month maturity due date, and after all loan extensions passed, the GIWYC entity defaulted on the $1.2 million dollar loan. Chesterton Capital filed a complaint against GIWYC in Suffolk Superior Court and judgment entered in Chesterton's favor on August 18, 2015. *See* Exhibit 7. The GIWYC default triggered the Loudon and Holley Personal Guarantee and Chesterton filed suit against Loudon and Holley for repayment in the instant matter. *See* Exhibit 3.

Approximately three years later, Loudon and Holley filed a Third-Party Complaint in Superior Court against Brensley on or around August 15, 2015, alleging that Brensley orally made false statements which they relied upon in agreeing to sign the Personal Guarantee. *See* Exhibit 1 at ¶ 19-23. Loudon and Holley state in their Complaint against Brensley that the reason they signed the Personal Guarantee was due to their reliance upon Brensley's confidence and her opinion that Chesterton would foreclose on the film rather than seek payment through the Personal Guarantee, *quoting*:

> "22.    In reliance on these representations by Brensley, the Plaintiffs executed a Personal Guaranty of Payment (hereinafter "Personal Guaranty")."

*See Id.* at ¶ 18-22.

Loudon and Holley attached to their Complaint the Personal Guarantee they signed. *See* Exhibit 1 at "Exhibit 4." In the course of discovery in the instant matter, Loudon produced a computer printout in the form of an email dated October 10, 2012 allegedly from Brensley, stating that she would enter into an agreement at a later date with them to offer some manner of repayment should the Personal Guarantee trigger. *See* Exhibit 10.

9

The proposed computer printout states that a contract between Loudon, Holley and Brensley would be executed on October 12, 2012. *Id.* The proposed contract in the alleged email was never executed, circulated, prepared or discussed after October 10, 2012. *Id.*

Sometime during the pendency of the loan repayment period, Holley and Loudon entered into a Joint Venture agreement with Brensley, the purpose of which was to serve as a financial intermediary or equity participant in projects including but not limited to film. *See* Joint Venture agreement between Holley, Loudon and Brensley, p.1, attached hereto as <u>Exhibit 11</u>.

There has been no evidence offered to suggest any subsequent projects were ever brought under the new Joint Venture agreement umbrella by either Holley, Loudon or Brensley.

On January 2, 2017, Holley and Loudon brought the same claims they filed in state court into district court. Brensley has filed for a motion for summary judgment in Superior Court. She is waiting a date for court.

## III.   LEGAL STANDARD

### A.   Standard for Dismissal for Failure to State a Claim Upon Which Relief Can be Granted

Under Federal Rule of Civil Procedure 12(b)(6), a purported cause of action may be dismissed when the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the complaint must meet two criteria:

1.   It must assert a plausible claim; and

2.   It must set forth sufficient factual allegations to support the claim.

*Iqbal,* 129S. Ct. at 1949-50 (citing *Trombly,* 550 U.S. 554); *see also Frith v. Guardian Life Insurance Co. of Am.;* 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (explaining that dismissal can

be based on either a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory).

In *Twombly*, the Supreme Court squarely rejected the Rule 12(b)(6) standard set forth under *Conley v. Gibson* 355 U.S. 41, 45-46 (1957). Pleadings are no longer satisfied by "an unadorned the-defendant-unlawfully-harmed me accusation. Now, neither a "formulaic recitation of the elements of a cause of action nor naked assertions of fact devoid of further factual enhancements is sufficient to withstand dismissal.

To satisfy the new standard under *Twombly and Iqbal* a "complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face."

**B.      Breach of Contract and Agreement to enter into a contract at a later time (agreement to agree)**

To establish a breach of contract under Massachusetts law, a plaintiff must show that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage.  Full Spectrum Software, Inc. v. Forte Automation Sys., Inc., 100 F. Supp. 3d 50 (D. Mass. 2015).

An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto. Rosenfield v. U. S. Trust Co., 290 Mass. 210, 217, 195 N.E. 323, 326 (1935); Ridgway v. Wharton, 6 H. L. Cas. 238, 304; Lyman v. Robinson, 14 Allen, 242, 254 ("An agreement to be finally settled must comprise all the terms which the parties intend to introduce into the agreement. An agreement to enter into an agreement upon terms to be afterwards settled between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled. Until those terms are settled, he is perfectly at liberty to retire from the bargain").

Indeed, the fact that one would ordinarily expect a particular transaction to be set forth in a carefully written document "justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled." Tull v. Mister Donut Dev. Corp.,7 Mass. App. Ct. 626, 630, 389 N.E.2d 447 (1979).

## C.    Parole Evidence Rule

In Massachusetts, it is unreasonable as a matter of law to rely on prior oral representations that are (as a matter of fact) specifically contradicted by the terms of a written contract. Masingill v. EMC Corp., 449 Mass. 532, 543 (2007); HSBC Realty Credit Corp. (USA v. O'Neill, 745 F. 3d 564, 571 (1st Cir. 2014)("reliance on supposed misrepresentations that contradict the terms of the parties' agreement is unreasonable as a matter of law and so cannot support a fraudulent-inducement claim."); see also Starr v. Fordham, 420 Mass. 178, 188 (1995)("if the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue.")(quoting Turning v. Johnson & Johnson, 809 F.2d 90, 97 (1st Cir. 1986)).

## D.    Offering an opinion as to whether a third party will enforce a personal guarantee is not tantamount to negligence should that opinion turn out incorrect.

"To prevail on a claim of negligence, 'a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Lev v. Beverly Enterprises–Massachusetts, Inc., 457 Mass. 234, 239–240 (2010),* quoting *Jupin v. Kask, 447 Mass. 141, 146 (2006).* Whether a party owes another a duty of care is usually a question of law for the court to decide. *Id.* In general, "there is no duty to control another

person's conduct to prevent that person from causing harm to a third party." *Lev,* 457 Mass. at

246.

**E.      The Court should abstain from exercising jurisdiction**

A federal district court has discretion whether to exercise its jurisdiction or to abstain.

*Wilton v. Seven Falls Co.* 515 U.S. 277, 288, 115, S. Ct. 2137, 132 L. Ed. 2d 214 (1995)

(Discretion is conferred on the courts "rather than an absolute right upon the litigant"); *Brillhart*

*v. Excess Inc. Co.,* 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942); *United Capitol Ins. Co.*

*v. Kapiloff,* 155 F.3d 488, 493 (4th Cir. 1998) ("district courts have great latitude in determining

whether to assert jurisdiction over judgment actions").  Where "a parallel or related proceeding is

pending in state court" district courts have wide discretion to decline jurisdiction.  *New*

*Wellington Fir. Corp. v. Flagship Develop. Corp;,* 416 F. 3d 290, 297 (4th Cir. 2005); *Centennial*

*Life Ins. Co. v. Poston,* 88 F.3d 255, 257 (4th Cir. 1996).  The district court should determine

whether the controversy "can better be settled in the proceeding pending in state court," *Wilton,*

515 U.S. at 282, 115 S. Ct at 2137 by weighing principles of "federalism, efficiency, and comity

that traditionally inform a federal court's discretionary decision whether to abstain from

exercising jurisdiction over state law claims in the face of parallel litigation in the state courts."

*Nautilus Ins. Co. v. Winchester Homes, Inc;* 15 F.3d 371, 376 (4th Cir. 1994).

The Fourth Circuit has articulated four factors to assist a district court in balancing the

federal and state interests:

(1) whether the state has a strong interest in having the issues decided in its courts; (2)

whether the state courts could resolve the issues more efficiently than the federal courts; (3)

whether the presence of "overlapping issues of fact or law" might create unnecessary

"entanglement" between the state and federal courts; and (4) whether the federal action is mere

"procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Kapiloff,* 155 F. 3d at 493-94 (4ᵗʰ Cir. 1998); *see also Harleysville Mutual Inc. v. Cambridge*

*Corp,* 2006 WL 2038302 (D.S.C. 2006).

## IV.   ARGUMENT

**A.   As a matter of law, an agreement to enter into a contract at a later time is unenforceable.**

Counts II, IV, VII, VIII, and IX of Loudon and Holley's Third Party Complaint aim to

hold Brensley responsible for repaying Chesterton upon a GIWYC loan default, suggesting that

there was a contract for indemnify between Loudon, Holley and Brensley and 2.) her refusal to

pay back the $1.2 million loan is a breach of said indemnity contract.

This theory relies in whole upon a computer printout produced by Loudon, which

purports to be an email from Brensley.  The email states:

> "Hi Byron and John,
>
> "I just wanted to quickly acknowledge our agreement today that I will be taking on an obligation to participate in the repayment to John Walsh upon default.  It is my intention to enter into an express agreement with you both collectively that will state that intent no later than Friday, October 12, 2012." *See* Exhibit 10.

The email is telling: "*...it is my intention to enter into an express agreement....that will*

*state that intent no later than Friday, October 12, 2012. " Id.* This document contains no terms,

consideration, share percentages, or acceptance.  It contains only an acknowledgment of an

intention to enter into an agreement at a later date.  That agreement never transpired.  The

content of this proposed email cannot be any more lacking when it comes to fulfilling the

necessary elements of a contract. Thus, we consider it as it's presented before us: an agreement to prepare and enter into an agreement at a later time.

An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto. Rosenfield v. U. S. Trust Co., 290 Mass. 210, 217, 195 N.E. 323, 326 (1935); Ridgway v. Wharton, 6 H. L. Cas. 238, 304; Lyman v. Robinson, 14 Allen, 242, 254 ("An agreement to be finally settled must comprise all the terms which the parties intend to introduce into the agreement. An agreement to enter into an agreement upon terms to be afterwards settled between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled. Until those terms are settled, he is perfectly at liberty to retire from the bargain").

Indeed, the fact that one would ordinarily expect a particular transaction to be set forth in a carefully written document "justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled." Tull v. Mister Donut Dev. Corp.,7 Mass. App. Ct. 626, 630, 389 N.E.2d 447 (1979).

Here, one would reasonably expect that a contract for repayment of a $1.2 million loan have some terms assigned to it. Moreover, one may expect it to be in an actual contract – not an email. Yet we find neither present. We find only a proposal to enter into a later agreement.

One of the longest-standing principals in contract law is quite simple. An agreement to agree at a later time is not a contract. Loudon and Holley have expanded two counts of their Complaint to claim the opposite is true. To allow Counts I and II to move forward would serve to unravel hundreds of years of contract law and deter anyone from conversing about proposed agreements before working out the details, whether material or not.

15

Last, in the instant matter, Judge Kenneth J. Fishman already ruled on this very issue in Chesterton Capital's summary judgment motion.  In that decision, he found there was no written agreement to indemnify on the part of Brensley, noting "[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto," *citing Rosenfield v. United States Trust Co.,* 290 Mass. 210, 217 (1935).  *See* Memorandum of Decision and Order of Plaintiffs' Motion for Summary Judgment and Defendant John C. Loudon's Cross Motion for Summary Judgment, P. 9, dated January 2, 2017, attached hereto as Exhibit 6. The same argument is made here so that the earlier decision may be applied directly to the Third Party Complaint against Brensley.

**WHEREFORE**, the aforementioned reasons, Anne Brensley requests that this Court grant her the Motion to Dismiss.

**B.      As a matter of law, oral representations are not sufficient, nor admissible to contradict the terms of a written contract.**

Counts I, IV, VIII , X of Loudon and Holley's Third Party Complaint allege that they only signed the Personal Guarantee to repay the $1.2 million loan because Brensley made certain representations which were not true, specifically that Chesterton would not require repayment of the loan in the event of default. *See* Exhibit 1, ¶ 16.

We need not look to the veracity of Loudon and Holley's accusations, rather we take them in a light most favorable to the Plaintiff.  That is, for the purpose of summary judgment, a moving party accepts them as true.  So for a moment we accept (although only for the purposes of summary judgment) that Brensley orally represented to Loudon and Holley, for whatever reason, both would not be personally liable for repayment of the $1.2 million loan (even though they signed the Personal Guarantee).  The question then becomes, from the standpoint of the Parole Evidence Rule, *do those statements contradict the written agreement?*

In Massachusetts, it is unreasonable as a matter of law to rely on prior oral representations that are (as a matter of fact) specifically contradicted by the terms of a written contract. Masingill v. EMC Corp., 449 Mass. 532, 543 (2007); HSBC Realty Credit Corp. (USA v. O'Neill, 745 F. 3d 564, 571 (1st Cir. 2014)("reliance on supposed misrepresentations that contradict the terms of the parties' agreement is unreasonable as a matter of law and so cannot support a fraudulent-inducement claim."); see also Starr v. Fordham, 420 Mass. 178, 188 (1995)("if the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue.")(quoting Turning v. Johnson & Johnson, 809 F.2d 90, 97 (1st Cir. 1986)).

A Personal Guarantee, by implication, guarantees that an individual would be responsible for repayment. That is the main point of a Personal Guarantee, and sophisticated capital investment executives such as Loudon and Holley understand that. To end here would end short, yet no further details could better explain this very basic concept, aside from perhaps analogizing that when pulled over by a police officer for failing to stop, one responds with "I didn't think that a stop sign meant stop" or perhaps "I knew it meant stop but I was told by the gas station attendant police don't usually ticket for that sort of thing." Likewise, Loudon and Holley's claim becomes "I didn't think a Personal Guarantee really meant to personally guarantee." All of this relies upon Anne Brensley's purported oral representations that contradict the plain meaning of the Personal Guarantee. The statements are not admissible under the Parole Evidence Rule.

Counts III, IV and V have bloomed into a web of additional facts and claims concerning the later consequences of whether the Personal Guarantee would trigger and/or what triggered it. We'll address those, but request the court's attention remains here, where the allegations of

Loudon and Holley's Complaint, and the success of their claim, rely solely upon dismissal of the Parole Evidence Rule. It shouldn't.

**C. Anne Brensley's alleged suggestion that Chesterton Capital would foreclose on the film and likely sell it to another film company is not enforceable as a contract, nor is it actionable negligence.**

Loudon and Holley suggest that Brensley deceived them, or at the least was negligent when she suggested that rather than enforce the Personal Guarantee, Chesterton Capital would merely foreclose on the film and sell of the property rights. *See* Exhibit 1 at ¶ 19. For the purpose of summary judgment, let's suggest Loudon and Holley are right, and Brensley's assessment was incorrect. There is no evidence that giving a wrong opinion is a breach of fiduciary duty or even negligence.

There is no evidence here that Brensley purposefully lied or concealed evidence. The claim, quite simply, is that her suggestion – her best guess – was wrong, and only in part. First, Loudon and Holley allege Brensley offered her opinion that Chesterton would foreclose on the film. That happened; he foreclosed and instituted a collections action in Suffolk Superior Court. *See* Exhibit 7. Next, she was alleged to have suggested that Chesterton would likely sell off the property rights to another studio. *See* Exhibit 1, ¶ 18-19. Byron Holley himself states in an affidavit that Chesterton has received offers for the film and counter-offered. *See* Exhibit 12, ¶ 18-19. To the extent Loudon and Holley do not believe Chesterton's efforts are satisfactory, or his counter-offer reasonable, that's a matter between them and Chesterton, not Brensley. Of note, however, Brensley was right again. Her estimate fell short when Chesterton could not reach a deal with any of the additional studios. Or in other words, things didn't go as planned in Hollywood. Loudon and Holley blame Brensley. As mentioned above, oral representations are not admissible to contradict the writing. In this case that means Brensley's alleged statements

are not admissible to prove the Personal Guarantee was somehow non-binding, despite it clearly stating to the contrary. Importantly, however, even if those statements were introduced, Brensley cannot be held liable for simply giving an opinion as to what she thought would happen, especially here, where she was hired solely to find a financier and also, because her opinion was mostly right.

"To prevail on a claim of negligence, 'a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Lev v. Beverly Enterprises–Massachusetts, Inc.*, 457 Mass. 234, 239–240 (2010), quoting *Jupin v. Kask*, 447 Mass. 141, 146 (2006). Whether a party owes another a duty of care is usually a question of law for the court to decide. *Id.* In general, "there is no duty to control another person's conduct to prevent that person from causing harm to a third party." *Lev, 457 Mass. at 246*.

Brensley had no duty to force Chesterton to sell the film's property rights, nor did she have a duty to make certain Chesterton's actions did not negatively impact Loudon and Holley's later risk of paying off the loan themselves. Brensley was merely a coordinator of parties. No duty of care existed.

Moreover, she was not guaranteeing the result of the transaction or the film's outcome. As previously stated, she merely gave an opinion. Loudon and Holley were the investment risk-takers. If they decided to personally guarantee a $1.2 million loan contingent upon Brensley's earlier opinion, then that's a contingency they should have reduced to writing.

**WHEREFORE**, the aforementioned reasons, Anne Brensley requests this Court grant her the Motion to Dismiss.

**D.**   **Loudon and Holley were aware of and requested the loan extensions identified in Count III of their Third Party Complaint.**

Loudon and Holley alleged in Count III of their Third Party Complaint that Brensley breached her Fiduciary duty with them by negotiating a loan extension to their detriment.  In fact, it was Loudon and Holley that demanded a loan extension agreement.  *See* Exhibit 8.

Loudon and Holley entered into an agreement with Brensley whereby she would find them a financier for the $1.2 million loan they requested in collaboration with GIWYC. Thereafter, contemplating that Brensley, Loudon and Holley could work on additional projects in the future, the three signed a separate Joint Venture agreement.  *See* Exhibit 11.  No new projects were ever completed under this separate agreement.  Loudon and Holley's attempt to reinforce Brensley's alleged duty to them, using a fruitless later agreement, serves as a red herring.  It has nothing to do with her duties to track down a financier.  Moreover, the notion they were unaware or had no control over the loan extension is impossible given their own statements demanding that GIWYC execute the extension. *See* Exhibit 8.  No evidence has been offered to suggest anything to the contrary.

**WHEREFORE**, the aforementioned reasons, Anne Brensley requests this Court grant her Motion to Dismiss.

**E.**   **If the court denies Brensley's Motion to Dismiss, the court should abstain or stay the proceedings.**

There is an on-going state judicial action commenced close to two years before this action.  That action not only implicates important state interests, but substantial progress has been made in that case.  If the state court grants Brensley her summary judgment, the district court will be intertwined with the pleadings of this case.  Holley and Loudon have filed suit against Brensley for identical claims with identical facts.  Two state judges have all ready, made

determinations regarding some of those facts and are in the best position to make final

judgments.

   **WHEREFORE**, the aforementioned reasons, Anne Brensley requests this Court abstain from

jurisdiction or the court stay the proceedings until the state court finalizes its judgments.



                                        Respectfully submitted,
                                        ANNE BRENSLEY, PRO SE



Date: _March 23, 2017_



   I, Anne Brensley, the undersigned, have served this document upon all parties of record

this _23_ day, _March_, 2017.



                    Anne Brensley