UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
CHESTERTON CAPITAL LLC,          )
          Plaintiff,          )
                                                    )      Civil Action No. 1:16-CV-10848-LTS
          v.          )
                                                    )
LEGACY POINT CAPITAL LLC,        )      ORAL ARGUMENT REQUESTED[1]
BYRON L. HOLLEY and JOHN C.       )
LOUDON,          )
          Defendants.         )
_____)

**PLAINTIFF'S RENEWED MOTION FOR SANCTIONS FOR VIOLATION OF THIS COURT'S APRIL 14, 2017 DISCOVERY ORDER AND REQUEST THAT DEFENDANT BYRON HOLLEY BE ORDERED TO APPEAR BY TELEPHONE DURING THE STATUS CONFERENCE SCHEDULED FOR JUNE 14, 2017**

**(MEMORANDUM OF LAW INCORPORATED)**

Pursuant to Fed. R. Civ. P. 37(b)(2)(A), Plaintiff Chesterton Capital LLC ("Chesterton") renews its motion that this Court sanction Defendant Byron L. Holley ("Holley") for (a) his failure to comply with the mandatory order from this Court to "produce both the disputed Wells Fargo account number and the underlying unredacted Wells Fargo statement(s) to Plaintiff's counsel by Tuesday April 18, 2017," and (b) his repeated misrepresentations to the Court (both in filings and at hearings) concerning the alleged transfer of the funds and his purported inability to obtain the information the Court ordered to be produced. The sanctions should include Chesterton's costs and attorneys' fees for all of the actions that have occurred on account of Holley deceitful discovery responses. In order for the Court to make a full and complete determination on Chesterton's Motion for Sanctions without further delay, Chesterton further requests the Court order Holley to appear by telephone for the status conference scheduled for

---

[1]      Chesterton requests this Motion be heard at the status conference scheduled for June 14, 2017.

1

June 14, 2017 so that the Court may have the opportunity to question Holley under oath, if necessary.

## INTRODUCTION

This is an action by Chesterton against Legacy Point Capital LLC ("Capital"), and its managing members, Holley and John Loudon ("Loudon"), based on misrepresentations made by Defendants to induce Chesterton to issue a loan to finance a film project. The principal misrepresentation was that Holley had sufficient funds - over $3 million in cash and securities at Wells Fargo Advisors LLC ("Wells Fargo") - to personally guarantee the loan, which he verified in a financial statement and redacted "snapshot" of the account provided to Chesterton. After receiving non-responsive, sanctionable discovery responses from Holley, the Court ordered Holley to produce the number for the account that held the $3 million and an unredacted, complete copy of the snapshot. He did not. Instead, Holley engaged in a series of misrepresentations to Chesterton and the Court concerning the transfer of funds and his alleged efforts to comply with the Court's order to avoid complying with his discovery obligations and avoid liability for fraud. As a result, Holley should be sanctioned.

## PROCEDURAL HISTORY

On or about February 14, 2017, Chesterton served Holley with Interrogatories and an Amended Request for Production of Documents seeking *inter alia*:

- the value of each account he had with Wells Fargo on October 10 and 12, 2012 with the type of account, account number and value of the account (Interrogatory No. 1);

- "[a]ll documents identifying the value of any asset, including securities, held by you (individually or jointly) and any liabilities owed by your or claims against you on October 10, 2012 and October 12, 2012" (Request No. 1);

- all documents supporting his statement that he had approximately $3 million in a securities portfolio as of October 10, 2012 and that substantiate the value of those assets (Request Nos. 3-4);

2

- the account number for the account reflected in the snapshot (Interrogatory No. 3); and

- "[t]he original of [the snapshot], including all pages of the documents with the account number(s) and/or produce an unredacted, complete copy of [the snapshot] clearly showing the account number."  (Request No. 5).

In his Answers to Interrogatories, Holley provided his "current active account numbers," which included an IRA account, and represented that he "believe[d] that there were other accounts that have been purged or terminated, including a profit sharing plan and 401k or IRA," but failed to provide the other information requested.  In his documents responses, Holley objected to producing the documents identified above and/or claimed that responsive documents had already been produced in the state court action, which was false.

As a result, on April 13, 2017, Chesterton filed a Motion to Compel Holley to produce *inter alia* information and documents responsive to the above requests.  (Dk. No. 51.)

On April 14, 2017, this Court issued an order requiring Holley to serve any revised discovery responses by April 18, 2017 and "produce both the disputed Wells Fargo account number and underlying unredacted Wells Fargo statement(s) to Plaintiff's counsel by Tuesday, April 18, 2017" (the "Discovery Order").  (Dk. No. 56.)  The Court further ordered the parties to confer by April 26, 2017 concerning any remaining discovery disputes and for Chesterton to file a statement concerning such disputes by April 28, 2017.  (Id.)

On April 18, 2017, Holley served supplemental responses to Chesterton's documents requests in which he represented that:

> [h]e did not retain the original snapshots of his accounts and was not able to obtain the account numbers or documents from Wells Fargo Advisors.  Holley will execute an authorization for the plaintiff to obtain records from Wells Fargo Advisors or such other financial institutions as it may designate for the purpose of obtaining records relevant to his account(s) and/or net worth on October 10 and 12, 2012.  Holley has no other documents responsive to this request.

3

A copy of the response is attached as **Exhibit A**. Holley did not provide the account number or the unredacted account statement, and did not identify the alleged efforts he made to obtain this information from Wells Fargo.

On April 21, 2017, Chesterton filed a Motion for Sanctions against Holley for violating the Discovery Order. (Dk. No. 61.)

On April 26, 2017, Chesterton's counsel, Attorney Amy Hackett, and Holley's counsel, Attorney John Lewis, conferred pursuant to the Court's Discovery Order. During that conference, Attorney Hackett raised Holley's failure to produce the responsive documents concerning the Wells Fargo account. Attorney Lewis claimed that Holley opened an account with Wells Fargo, borrowed $3 million (which he referred to as "trophy money") from an unidentified person, took a snap shot of the account showing the funds, transferred the funds back, and closed the account. Holley, however, never amended his discovery responses to reflect this new version of the story.

On April 28, 2017 (and again on May 2, 2017), Chesterton filed its Statement of Discovery Disputes pursuant to the Discovery Order, which identified Holley's failure to provide the information required by the Discovery Order. (Dk. No. 72).

On May 3, 2017, Holley responded to Chesterton's Statement of Discovery Disputes. (Dk. No. 82.) Similar to Attorney Lewis' representations to Attorney Hackett, Holley represented that the approximately $3 million in funds was "'trophy money' that he "borrowed and repaid the same day," Holley "did not retain the [snap shot], did not know the account number and could not retrieve it from WFA" because "WFA is not a bank and does not maintain client's records after the account is closed." (Id. at 3, 4, 6, 11.) Holley represented that he was

"reticen[t]" to provide information "about where the funds came from or to where they went" "to protect innocent third parties from Chesterton's threatened harassment." (Id. at 6.)

On May 5, 2017, Holley opposed Chesterton's Motion for Sanctions and similarly justified his failure to provide the account number or unredacted statement by representing that he "did not retain" a copy of the snapshot and that Wells Fargo Advisors "did not retain account information for the particular account opened and closed in 2012. They did not retain any information as to the account numbers of closed accounts." (Dk. No. 84 at 6.)

On May 8, 2017, the Court held a status conference. At the conference, Attorney Lewis represented to the Court that "the original document does not exist" and made a proffer that Holley would "testify . . . that he borrowed money, he put it in the account. He took a snap shot of the account, and he closed the account and he gave the money back." (Transcript of Status Conference at 36-37, relevant portions of which are attached as **Exhibit B**.) Attorney Lewis also represented that Holley told him "he has spoken to Wells Fargo a number of times, and they don't have the account number." (Id. at 39.) Attorney Lewis further represented that Holley did not want to reveal the name of the person who gave him the $3 million because "he was afraid that they were going to get dragged into the litigation, and he wanted to protect them." (Id. at 63.)[2]

Holley was deposed two days later on May 10, 2017. Holley's testimony confirms that, throughout this litigation, Holley made misrepresentations to Chesterton and the Court concerning the transfer of funds and the information he had concerning the account. Contrary to

---

[2] Later in the hearing, Attorney Lewis then confirmed that Holley's position was that "at the moment he looked at the screen or printed that, at that moment there was an account . . . and it had $3 million in it . . . and it came from another human being other than himself . . . and then the money left and went back to that other human being, the same person who had given him [sic] . . . and then on some basis the account was closed, or it was determined that it was opened in a mistaken, or the money was transferred by mistake." (Id. at 65-66.)

his prior representations and the representations he caused to be made, Holley testified that he called someone at Wells Fargo that he knew, asked them to do him a "favor" by transferring $3 million into his existing IRA account for "a very short period of time," took a snapshot of his IRA account reflecting the $3 million, and had the funds transferred back out "as if there was an error, it went into the wrong account in error." (Transcript of Deposition of Byron Holley dated May 10, 2017, at 57:24 -58:15, 62:16 to 71:8, copies of portions of which are attached hereto as **Exhibit C**). Specifically, Holley testified:

> Q. Did you, sir, own the $3 million?
>
> A. I did not.

\*\*\*

> Q. You've already told me that the funds weren't your funds. Where did they come from?
>
> A. I do not -- I -- I don't know -- individually, I don't know. I had Wells Fargo -- I used to be branch manager of the branch of A.G. Edwards that became Wachovia that then eventually became Wells Fargo. And the local Lexington branch, half the people there had worked for me at that time. I was already out of the business. Half the people that had worked for me at that time, and I made a phone call to have some assets transferred short term, which was done short term. The reason it's a snapshot, not a monthly statement. And the funds were taken back as if they was an error, it went into the wrong account in error.
>
> Q. All right. Now, Mr. Holley, who did you call at Wells Fargo to have the funds moved?
>
> A. I don't recall the name of the individual.

\*\*\*

> Q. Now, as I understand your testimony, these funds were moved for maybe -- I think you said a quarter of a day.
>
> A. Quarter, maybe a half day.
>
> Q. Quarter to a half day. And by the end of the day, they were moved out. Is that what happened?

A.    Before the end of the day.

Q.    Before the end of the day.

A.    It would be -- an example, if someone made a bank deposit into your account, the clerk put it in the wrong account, it's not going to reflect that you own that money. The funds would come back out as if it was an error. Of course this is a brokerage account, not a bank account.

Q.    So it's your testimony that you made a call to someone unidentified who you knew at Wells Fargo and that they made the transfer of assets into your account.

A.    That's correct.

Q.    They did you a favor.

A.    They did me a favor.

Q.    Did you tell them why it was that you were requesting this transfer of assets?

A.    I don't recall.

Q.    So the account that supposedly these assets were transferred into had to be set up, right, Mr. Holley?

A.    That's correct.

Q.    And in order to do that, you have to actually sign certain forms in order to have an account set up at Wells Fargo.

A.    I would agree.

Q.    This account itself, did it last simply for a quarter to a half a day?

A.    No. I had the account for –

Q.    So what was the –

A.    -- several years.

Q.    So what was the account number, Mr. Holley?

7

A.      I don't recall the account number as we sit here. I know it was an I -- I believe it was an IRA account.  And I know that because I actually told that to Anne Brensley.  "This is an IRA."

\*\*\*

Q.      So again, it's your testimony today that you had an account that was an IRA account and that you used that account to have the funds transferred in and out.

A.      Yeah.  I believe that -- I'm pretty certain it was an IRA account because I informed Anne Brensley of that.  Just simply an IRA account does have other restrictions -- I guess that's really not -- that's not important.  But in any case, I'm pretty sure this is the IRA account, in which I had two -- as far as I know, this account's still open.

       MR. ZUCKER:  Let's mark this as the next exhibit in order.

   (Exhibit 32, Wells Fargo Advisors Snapshot, October 1 - October 31, 2012, marked.)

       MR. ZUCKER:  Three to distribute, gentlemen.

Q.      Mr. Holley, what I'm showing you and which we have marked as Exhibit 32 is a snapshot, as it's called, from Wells Fargo Advisors of Brian L. Holley IRA, FCC as custodian, which bears the date October 1 to October 31, 2012 and has the account number redacted.  Is this the account that you're referring to?

A.      I believe so.

Q.      And as of October -- in the period October 1 through October 31, 2012, it shows an opening value of $101.34 and a closing value of the same amount. Correct?

A.      Yes, sir.

Q.      So you had no money in this account of any significance.

A.      Over this period of time, the funds did -- I did have funds moved in. I believe it's the same account. I'm pretty certain it is. Funds moved in. Funds went immediately back out. If it's marked as an error that the funds went in there, it's just as if you went down to the bank and you gave a check to the clerk and the clerk put it in the wrong account and then recognized that error, you know, before the day's over, it will never show up on your statement. You'll never even know that it went in that other account.

       MR. ZUCKER:  Move to strike.

> Q. Mr. Holley, I'm going to ask you my question again. In this account, you, yourself, had no funds of any significance?
>
> A. As of October -- on October 1 and then at the end of that month, that settlement, October 31, there was no funds in the account other than the hundred bucks.
>
> Q. Now, the account which you've identified – now I'm going to show you the same document but with an account number.
>
> MR. ZUCKER: Let's mark that as Exhibit 33.
>
> (Exhibit 33, Wells Fargo Advisors Snapshot, October 1 - October 31, 2012, marked.)
>
> Q. Mr. Holley, that shows the account number, the account that was previously redacted, does it not?
>
> A. Yes, sir.
>
> Q. And is it your testimony today that that is the account that you used to have the funds moved in and out of that were in the account for a quarter to a half a day?
>
> A. That, I do recall. Yes. That's what I recall. Yes.

(Id.)

## ARGUMENT

Fed. R. Civ. P. 37(b)(2)(A) permits the court to sanction a party for failing to comply with a court order concerning discovery, including but not limited to "directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," "prohibiting the disobedient party from supporting or opposing claims or defenses, or from introducing designated matters into evidence," and "rendering a default judgment against the disobedient party." The Court must also order the disobedient party or its attorney to pay "reasonable expenses, including attorneys' fees, caused by the failure . . . ." Fed. R. Civ. P. 37(b)(2)(C).

9

Here, Holley failed to comply with the Discovery Order although, based on his deposition testimony, he could have complied without all the gyrations that he put his counsel through in making false statements to the Court in both his filings and at the status conference, as well as to Chesterton in his signed discovery responses. Mr. Holley should not be permitted to wipe the slate clean with his new testimony. which is at odds with his prior statements and to escape the implications that this all is a bold face lie.

*First*, Holley claimed that he did not know the account number for the account the funds were transferred into. Despite claiming for months that he opened and then closed an account at Wells Fargo for a single day for the purpose of transferring the funds, that he had no records for that account and could not recall the account number, Holley testified at his deposition to essentially committing securities fraud in concert with a Wells Fargo employee and that the funds were transferred into his existing IRA account with Wells Fargo. If that were true, Holley should have provided the IRA account number in response to the Discovery Order, especially since he continues to hold the account with Wells Fargo. There is no excuse for his noncompliance. This Court can infer that this statement is just another in a series of misrepresentations made by Holley. Indeed, a closer examination of snapshot reveals that the eight-digit account number that Holley attempted to redact does not match up with the account number for his IRA account,[3] and the snapshot identifies the account as a "brokerage" account, not an IRA.

*Second*, Holley claimed that he made efforts to obtain the information the Court required him to produce in the Discovery Order. Holley had an obligation to either provide the information ordered by the Court or to make a reasonable and diligent effort to obtain the information. Holley (through counsel) represented to the Court that he had "spoken to Wells

---

[3] Chesterton will bring a clearer copy of the snapshot to the status conference on June 14, 2017.

Fargo a number of times, and they don't have the account number" for the account the $3 million was transferred into. This cannot be true. Holley now claims that the funds were transferred into his then-existing and still opened IRA account. Since Holley never opened a separate account as he initially represented, there would have been no reason for him to contact Wells Fargo to attempt to obtain information for a non-existent account, or to contact Wells Fargo for an IRA account number that he currently has. The only conclusion is that this was a lie and that Holley simply made no effort to comply with the Court's order.

*Third*, Holley claimed that he was reluctant to provide the name of the party from whom he received the funds. Holley represented to Chesterton's counsel and the Court in writing and orally (through counsel) that he was reluctant to identify the person who lent him $3 million for a single day because he did not want this person to be brought into the litigation. But Holley then testified – not that he was reluctant to identify this person – but that he did not know from whom the funds were transferred because he had a Wells Fargo employee do him a "favor" by transferring $3 million from an unknown person into his account for the purpose of taking the snap shot and then backing the funds out as if it were an "error" within a half a day.

*Fourth*, Holley claimed that he opened and closed an account with Wells Fargo the same day for the purpose of transferring "trophy money," that the money was "borrowed" by Holley from a supposed third party, and then returned. This claim would have at least given Holley some entitlement to the money. But since that claim would not stand up to the light of day when scrutinized, Holley now claims that he had no entitlement to the $3 million; rather it was in his account through an arranged mistake. Even this latest invention will not work, however, because before the transfer could occur (even if by mistake), a ACAT form would need to be signed to

11

initiate the transfer and then the funds would need to be posted before a snapshot could be taken of the account. Holley admitted this in part during his deposition:

> Q. When you transfer securities, sir, is there – are there forms that you have to fill out to permit the transfer of securities to occur?
>
> A. Typically.
>
> Q. What forms are those?
>
> A. An ACAT form.
>
> Q. And that's A-C-A-T?
>
> A. Yes.
>
> Q. And what is an ACAT form?
>
> A. It's a request to transfer assets.
>
> Q. And who has to sign it?
>
> A. Typically an individual who's asking for the transfer.
>
> Q. Typically the owner of the account and the asset, right?
>
> A. Correct.
>
> Q. And as a matter of recordkeeping, that form needs to be maintained under the security regulations for six years, doesn't it?
>
> A. I don't -- I can't answer that.

(Portions of Transcript of Deposition of Byron Holley at 75:11-76:6.)

Based on Holley's failure to comply with the Discovery Order, his series of misrepresentations and evasive conduct, there can only be one conclusion: - the snapshot was either created by Holley or was doctored by Holley from someone else's account. Accordingly, Chesterton requests that for purposes of this action, it be taken as established that:

1. Holley never held or owned the securities in the account as represented in **Exhibit D**.

2. In the month of October 2012, the only assets that Holley had at Wells Fargo were as shown on **Exhibit E**. See Portions of Transcript of Deposition of Byron Holley, at 75:6-10.

3. Holley created or furnished **Exhibit D** in order to deliberately overstate the assets that he held in the account at Wells Fargo.

4. Holley knew that **Exhibit D** was a fiction at the time that he furnished the document to be given to Chesterton.

In addition, Holley should be ordered to pay for all of Chesterton's costs and attorneys' fees incurred after Holley served his initial discovery responses, which were non-responsive, evasive and now proven to be false, which required Chesterton to engage in further investigation and motion practice. This includes Chesterton's costs and attorneys' fees for filing and arguing its Emergency Motion to Compel (Dk. No. 51), Motion for Sanctions (Dk. No. 61), Chesterton's Statement on Discovery Disputes (Dk. No. 72), attendance at the May 8, 2017 hearing (Dk. No. 85), subpoenas to Wells Fargo Advisors and the taking of its 30(b)(6) deposition, and this Renewed Motion.

## CONCLUSION

For the foregoing reasons, Chesterton requests the Court grant Chesterton's Renewed Motion for Sanctions and issue an order: (1) establishing the facts identified above; and (2) requiring Holley to pay Chesterton's costs and fees in connection as stated above . Within ten (10) days of allowance of the Motion, Chesterton will submit an affidavit from counsel attesting to costs and fees incurred. Chesterton also requests the Court order Holley to appear by telephone for the June 14, 2017 status conference so that the Court may have the opportunity to question Holley under oath, if necessary.

CHESTERTON CAPITAL LLC
By its attorneys,

*/s/ Amy B. Hackett*
William A. Zucker, Esq., BBO # 541240
Amy B. Hackett, BBO# 676345
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
617-449-6500
617-607-9200 (fax)
wzucker@mccarter.com
ahackett@mccarter.com

June 8, 2017

## RULE 37 AND LOCAL RULE 7.1 CERTIFICATION

I, Amy B. Hackett, certify that by email at approximately 2:20 pm on June 8, 2017, I reached out to Defendant's counsel, John Lewis, concerning this Motion in a good faith effort to resolve the issues identified here. As of the filing of filing this Motion, I am not heard back from Attorney Lewis.

*/s/ Amy B. Hackett*
Amy B. Hackett

## CERTIFICATE OF SERVICE

I, Amy B. Hackett, hereby certify that on this 8th day of June, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system and by first class mail to:

Anne Brensley
28 Barney Hill Rd
Wayland, MA 01778

/s/ *Amy B. Hackett*
Amy B. Hackett
