UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHESTERTON CAPITAL, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 16-10848-LTS |
| BYRON L. HOLLEY, JOHN C. LOUDON, and LEGACY POINT CAPITAL LLC, | ) ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| ANNE BRENSLEY, | ) ) | |
| Third Party Defendant. | ) ) | |

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DOCS. 120 and 128)

October 20, 2017

SOROKIN, J.

Plaintiff Chesterton Capital LLC ("Chesterton") sued Defendants John Loudon ("Loudon"), Byron Holley ("Holley"), and Legacy Point Capital LLC ("Legacy Point") for common law fraud and violation of Mass. Gen. Laws Ch. 93A in relation to a loan Chesterton extended toward the production of a long-in-the-works Janis Joplin biopic, "Get It While You Can" (herein "GIWYC"). In turn, Loudon and Legacy Point (together, the "Third Party Plaintiffs") filed a Third Party Complaint against Anne Brensley ("Brensley") for, *inter alia*, fraud, breach of fiduciary duty, breach of contract, and indemnification. Doc. 40 at 1. These claims arise from Brensley's engagement to assist Loudon, Holley, and Legacy Point in obtaining the loan from Chesterton. Brensley has moved for summary judgment on these claims.

Doc. 120.  Loudon and Legacy Point have opposed Brensley's motion, Doc. 127, and filed a cross-motion for summary judgment on their claim for indemnification, Doc. 128, which Brensley has opposed, Doc. 139.

For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART Brensley's Motion for Summary Judgment (Doc. 120) and DENIES Third Party Plaintiffs' Cross Motion for Partial Summary Judgment (Doc. 128).

I.  FACTS

  A.  Agreements between Third Party Plaintiffs and Brensley

Loudon and Holley are Managing Members of Legacy Point, an investment banking company.  Beginning in June 2012, Legacy Point acted as a broker and middleman and sought investors for the GIWYC project.  Doc. 40 at 2.  At that time, Brensley was the Managing Director of Boston Financial Trust Advisors, LLC ("BFT").  Id.  On or around August 15, 2012, Legacy Point, BFT, and a separate production company, Get It While You Can, LLC ("GIWYC LLC"), executed a Co-Financing Agreement, under which BFT agreed to assist Legacy Point and GIWYC LLC with obtaining funding for GIWYC.  Doc. 49-2 at 16-23.  This agreement provided: "Nothing contained herein shall constitute a partnership between or joint venture by, the parties hereto or constitute either party the agent of the other."  Id. at 19.

On February 4, 2013, Loudon and Holley (on behalf of Legacy Point) and Brensley (on behalf of BFT) executed a Venture Agreement under which they agreed "to collaborate to finance an on-going slate of feature films and/or structure the financing for entertainment projects secured through the joint efforts of the Parties and to direct all film related projects that either party anticipates participating in, into the collaboration."  Doc. 88-1 at 2.  The Venture

Agreement entitled Brensley to a share of "[a]ll revenue, and profits paid to the extent and arising from this Venture Agreement[.]" Id. at 7. It further provided:

> "Nothing contained in this Agreement shall be deemed to create or establish, and nothing contained in this Agreement shall be interpreted as recognizing or acknowledging the existence of a partnership by or between existing Parties hereto, it being understood and agreed that each of The Parties is acting independently of the other in connection with the subject matter of this Agreement."

Id. at 8.

      B.     Chesterton Loan

Pursuant to the Co-Financing Agreement but prior to entering the Venture Agreement, Brensley introduced Third Party Plaintiffs to Chesterton, who agreed to provide a $1.2 million bridge loan towards the GIWYC project (the "Chesterton Loan"). Doc. 40 at 2. While GIWYC LLC ultimately received the Chesterton Loan, Chesterton sought from Loudon and Holley personal guaranties and confirmation of their financial capacity to backstop the loan. Id.; Doc. 88 at 5. Loudon and Holley agreed to guaranty the loan and produced proof of funds of over $3 million. Id. They separately entered into a side letter with GIWYC LLC outlining the terms under which they would provide personal guaranties. Id. On or around October 9, 2012, Chesterton and GIWYC LLC closed on the Chesterton Loan, and Loudon and Holley signed personal guaranties thereof. Doc. Nos. 25-1 and 25-2.

Throughout 2013, Chesterton provided several loan extensions and advanced additional amounts to GIWYC. Doc. 1 at 7-9. However, neither GIWYC nor Third Party Plaintiffs procured the financing necessary to begin production of the film. Doc. 38 at 7. GIWYC LLC defaulted on the Chesterton Loan on June 1, 2014. Doc. 1 at 9.

Holding an uncollectable judgment against GIWYC LLC, Chesterton brought suit on the personal guaranties in state court. Doc. 1 at 9. Chesterton separately brought this action in

federal court. Chesterton's Complaint alleges that Defendants engaged in unfair and/or deceptive acts and practices and made misrepresentations of material fact about their financial wherewithal in order to induce Chesterton to invest in the GIWYC project. Id. at 10-11. Consistent with their claims in the state court litigation,[1] Loudon and Legacy Point filed a Third Party Complaint in this action against Brensley for her role in the GIWYC project. Doc. 40.

II.     SUMMARY JUDGMENT STANDARD

"[A] court may grant summary judgment only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Perez v. Lorraine Enterprises, Inc., 769 F.3d 23, 29 (1st Cir. 2014) (citing Fed. R. Civ. P. 56(a)). "A 'genuine' issue is one on which the evidence would enable a reasonable jury to find the fact in favor of either party." Id. (citation omitted). "A 'material' fact is one that is relevant in the sense that it has the capacity to change the outcome of the jury's determination." Id. (citation omitted). "When considering the summary judgment record, all reasonable inferences are to be drawn in favor of the party opposing summary judgment, ... just as all disputed facts are viewed in the light most favorable to him." Thompson v. Cloud, 764 F.3d 82, 87 (1st Cir. 2014) (citation, internal quotation marks, and modifications omitted).

That said, where "the non-movant has the burden of proof on a critical issue and the evidence that she proffers in opposition to summary judgment is so vague that she could not prevail at trial, the motion must be granted." Perez, 247 F.3d at 318 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). The Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st

---

[1] Loudon and Holley filed a third party complaint in state court against Brensley on or around August 15, 2015.

4

Cir. 2008) (quoting Medina–Munoz v. R.I. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)). "Cross motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). "Where, as here, a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism." Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010).

III.   DISCUSSION

Loudon and Legacy Point asserted nine counts against Brensley in their Third Party Complaint.[2] Brensley moved for summary judgment on Counts II, III, VI, VIII, and IX, discussed below. Additional claims for fraudulent misrepresentation as to Brensley's status as a legal advisor (Count I) and as to the consequences of a Chesterton Loan default (Count IV), violation of 93A (Count VII), and negligence (Count X) will proceed to trial, as no party has moved for summary judgment on these claims.

   A.   Fraudulent Misrepresentation as to Repayment Obligation

In Count II, Third Party Plaintiffs allege that Brensley fraudulently induced Loudon to sign the guaranty by falsely representing to Loudon that she would share in the repayment of any amounts for which Loudon may be liable thereunder. Doc. 40 at 4-5. They rely chiefly on an email from Brensley purporting to indicate her intent to indemnify Loudon and Holley should their obligations under their personal guaranties be triggered. Doc. 127 at 2-3. Brensley argues

---

[2] Loudon and Legacy Point mislabel the fifth through ninth counts in the Third Party Complaint as Counts VI through X. Doc. 40. The Court follows the Third Party Complaint's labeling, which omits a Count V.

that Count II must be dismissed because the alleged agreement to share in any guaranty obligation is not an enforceable contract.  Doc. 121 at 8-10.

Absence of a binding indemnity does not itself entitle Brensley to judgment as a matter of law.  A plaintiff may prove false misrepresentation by establishing "that the defendant 'made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to [its] damage.'" Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (Mass. 2002) (internal citation omitted).  Statements by Brensley that fall short of an agreement thus still may support Third Party Plaintiffs' fraudulent misrepresentation claim if Brensley knew that she would not share in the repayment obligation; if she nonetheless obtained Loudon's personal guaranty by telling him that she would; and if Loudon's reliance on her statement of intent was reasonable.

On these questions, Loudon and Legacy Point have "set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995).  Brensley's email to Loudon stated that she would be "taking on an obligation to participate in the repayment to [Chesterton] upon default."  Doc. 127-2.  When asked at her deposition whether it was fair to say that her email statement was not true, Brensley explained that the participation envisioned "wasn't necessarily a monetary repayment" but was rather an undertaking "not to leave them hanging." Doc. 127-4.  Drawing all reasonable inferences in favor of Loudon and Legacy Point, a jury could reasonably conclude on this record that Brensley fraudulently misrepresented her intent.  Accordingly, the Court DENIES Brensley's Motion for Summary Judgment as to Count II.

B. Fraud as to Guaranty Version

6

Count III alleges that, in coordinating execution of Loudon's guaranty, Brensley fraudulently submitted to Chesterton a signed version of the guaranty that was not the version that Loudon intended to submit. Doc. 40 at 5. Insofar as Loudon contends that he never signed the submitted version (and rather that Brensley swapped the version that he did sign for the submitted version), Loudon admitted and alleged the submitted version of the guaranty in his 2015 third party complaint against Brensley in the related state court litigation. Doc. 122-6 at 6. He therefore is estopped from taking a different position in this matter. See Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32-33 (1st Cir. 2004) ("As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding.") (internal citation omitted).[3]

In his Opposition to Brensley's motion, Loudon and Legacy Point also advance a claim that Brensley "tricked [Loudon] into signing something other than what was intended." Doc. 127 at 3. By contrast, this contention does not contradict Loudon's earlier position on the version of the guaranty that he signed, and it is not estopped. However, Third Party Plaintiffs fail to offer any factual support for this theory. To thwart summary judgment, they must offer admissible evidence that Brensley tricked Loudon as to what he signed. Here, they do not even offer an affidavit statement by Loudon. Rather than explaining how the executed version came to bear Loudon's signature, Third Party Plaintiffs instead resort to their explanation that Loudon

---

[3] The state court found that Loudon was estopped from denying that he signed the submitted version based on his earlier position in those proceedings. Loudon notes that this estoppel was not part of a final judgment. Doc. 127 at 3. However, the Court does not base estoppel here on collateral estoppel (requiring final judgment) arising from the state court's ruling. Rather, the Court applies the doctrine of judicial estoppel, for which courts generally require (1) that "the estopping position and the estopped position [are] directly inconsistent," and (2) that "the responsible party [has] succeeded in persuading a court to accept its prior position." Alternative System Concepts, 374 F.3d at 33. The Court finds both that Loudon's positions contradict and that the state court accepted Loudon's prior position. Doc. 122-6 at 6 ("In the portion of their answer addressing the plaintiff's allegations that they executed the original personal guaranty, the defendants merely "state[d] that the Personal Guaranty speaks for itself as to its contents.").

signed and returned a revised version of the guaranty and that he was not notified that Chesterton rejected the revised version. [4] Id. Accordingly, Brensley's Motion for Summary Judgment is ALLOWED as to Count III.

### C. Breach of Fiduciary Duty

In Count VI, Loudon and Legacy Point allege that Brensley breached a fiduciary duty by not disclosing to Loudon a conflict of interest (namely, a commission from Chesterton with respect to its loan); not disclosing compensation from Chesterton for legal and financial advice; and inducing Loudon to guarantee a loan for which she received an undisclosed commission from Chesterton, thereby engaging in self-dealing. Doc. 40 at 5-6. To establish a breach of fiduciary duty, Loudon and Legacy Point must show "1) existence of a fiduciary duty arising from a relationship between the parties, 2) breach of duty, 3) damages and 4) a causal relationship between the breach and the damages." Qestec, Inc. v. Krummenacker, 367 F.Supp.2d 89, 97 (D.Mass.2005).

Brensley does not dispute that she owed Third Party Plaintiffs a fiduciary duty, and thus for purposes of this motion the Court accepts that Brensley's business dealings with Loudon and Legacy Point gave rise to such a duty. However, Loudon and Legacy Point have not provided sufficiently specific facts indicating that Brensley engaged in any conduct constituting a breach. They advance several grounds for a breach. First, they claim that Brensley's other work with Chesterton on unrelated deals gave rise to a breach. However, Loudon and Legacy Point

---

[4] The Court notes a second potential problem with this theory. In their Third Party Complaint, Third Party Plaintiffs allege that that Brensley "committed fraud by switching the revised guaranty with the original guaranty causing Chesterton to bring suit on a guaranty which Mr. Loudon never signed[.]" Doc. 40 at 5. Insofar as this theory presents a new claim of fraudulent misrepresentation that would have shaped Brensley's discovery requests had it initially appeared in the Third Party Complaint, Third Party Plaintiffs may not raise this theory for the first time in their Opposition.

concede that Brensley disclosed that she had a preexisting relationship with Chesterton as early as 2012, so this theory provides no basis for a breach. Doc. 127-1 at 2.

Next, Loudon and Legacy Point allege that Brensley received a "double commission"—payments from both Chesterton and Legacy Point in relation to the Chesterton Loan that Brensley secured while working on behalf of Legacy Point. But as their own Opposition acknowledges, a double payment is only alleged. Doc. 127 at 5. The parties agree that Brensley received a commission from Legacy Point. However, Loudon and Legacy Point have submitted nothing in or with their Opposition either showing that Brensley received a commission from Chesterton or supporting a reasonable inference that she did. For her part, Brensley denies having ever served as an attorney to Chesterton and argues that there is no evidence supporting "any payments made to Brensley by Chesterton for any services at all." Doc. 121 at 3. Because Loudon and Legacy Point "may not rest on mere allegations or denials of [their] pleading, but must set forth specific facts showing there is a genuine issue for trial[,]" Barbour, 63 F.3d at 37, this theory fails, and the Court ALLOWS Brensley's Motion for Summary Judgment as to Count VI.

### D. Breach of Contract

In Count VIII, Loudon and Legacy Point sue Brensley for breach of an oral and written agreement to share in repayment of the Chesterton Loan upon default by GIWYC LLC. Doc. 40 at 6. In order to succeed on this claim, Loudon and Legacy Point must prove "that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach." Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007). Third Party Plaintiffs rely on Brensley's October 10, 2012 email:

> "I just wanted to quickly acknowledge our agreement today that I will be taking on an obligation to participate in the repayment to John Walsh upon default. It is my intention

9

to enter into an express agreement with you both collectively that will state that intent no later than Friday, October 12, 2012."

Doc. 122-9.  Brensley argues that Third Party Plaintiffs cannot prove the first element of their claim—existence of an enforceable contract—because her statement reflects only an agreement to enter into an agreement.

The Court agrees with the state court's determination (and Brensley's argument) that Brensley's email establishes only an agreement to enter into a later agreement, and not an agreement itself.  Doc. 122-6 (noting that "[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto," citing <u>Rosenfield v. United States Trust Co.</u>, 290 Mass. 210, 217 (1935)).  Brensley's same-day acknowledgement of an earlier conversation and her statement of "intention to enter into an express agreement" indicate that the parties had not "progressed beyond the stage of 'imperfect negotiation'." <u>Situation Mgmt. Sys., Inc. v. Malouf, Inc.</u>, 430 Mass. 875, 878 (2000) (internal citation omitted).  Importantly, were Brensley's email to serve as the basis for a contract, it would still lack essential terms, including foremost the proportion of Brensley's share in the repayment obligation.  Because Loudon and Legacy Point cannot establish the existence of a contract for the Court to enforce, the Court ALLOWS the Motion for Summary Judgment as to their breach of contract claim.

  E. <u>Indemnification</u>

Finally, Count IX requests indemnification by Brensley in the event that Loudon or Legacy Point is found liable in state or federal court.  Doc. 40 at 6.  They advance two theories in support of this claim.  First, Loudon and Legacy Point claim that they are entitled to

indemnification as a matter of Massachusetts partnership law,[5] since "[n]o other legal relationship besides a partnership, such as employer/employee, can describe the relationship that existed between Ms. Brensley and Mr. Loudon." Doc. 127 at 5. However, even drawing all reasonable inferences in Third Party Plaintiffs' favor, the Court finds that they have failed to offer facts sufficient to establish a partnership. Even had both the Co-Financing Agreement and the Venture Agreement governed the parties' Chesterton Loan dealings,[6] neither would support the existence of a partnership; both agreements expressly disclaim creation of such a relationship between the parties. Doc. 88 at 5; Doc. 88-1 at 8. The deposition testimony of Brensley that Loudon and Legacy Point cite as evidence of an admission of a partnership says no such thing. Doc. 127-5. The only evidence supporting the existence of a partnership is Loudon's one-sentence assertion in his affidavit that Brensley was his partner for obtaining financing for GIWYC and split any profits made as a result of obtaining such financing. Doc. 127-1 at 2. Merely stating that a partnership existed does not make it so.

Second, the Third Party Complaint (but not the Opposition) grounds the claim for indemnification in Brensley's alleged promise to share 50% of the responsibility for repayment of the Chesterton Loan. Doc. 40 at 6. This theory requires Third Party Plaintiffs to establish a

---

[5] Under G.L. Chapter 108A, Section 18(a), "each partner must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits." Section 18(b) provides further: "The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business."

[6] The record does not establish whether either agreement was in effect in October 2012. In her Answer to the Third Party Complaint and her Opposition to Third Party Plaintiffs' Cross-Motion for Summary Judgment, Brensley asserts that this agreement expired months prior to October 2012, with no performance by the parties. Doc. 88 at 5; Doc. 139 at 3. Elsewhere, she notes that she introduced Third Party Plaintiffs to Chesterton pursuant to that agreement. Further, the 2013 Venture Agreement arguably would not establish retrospectively a partnership at the time of the 2012 Chesterton Loan.

contract with this provision. They cannot.[7] The Court has determined that no such contract existed. Supra Section III.D.

Presented with insufficient evidence of a source for an indemnification obligation, the Court ALLOWS Brensley's Motion for Summary Judgment and DENIES Third Party Plaintiffs' cross-motion on Count IX.

IV. CONCLUSION

For the foregoing reasons, the Court ALLOWS Brensley's Motion for Summary Judgment as to Counts III, XI, XIII, and IX and DENIES Brensley's Motion for Summary Judgment as to Count II (Doc. 120), and further DENIES Third Party Plaintiffs' Motion for Summary Judgment as to Count IX (Doc. 128).

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[7] Neither in their Third Party Complaint nor in their Opposition do Loudon and Legacy Point assert that any indemnification arises from the Co-Financing Agreement or the Venture Agreement. Therefore, although these agreements contain indemnification provisions, neither provide a basis for judgment for Third Party Plaintiffs or for proceeding to trial on this claim.